Jolene ECKLER, et al., Appellants,

v.

The GENERAL COUNCIL OF THE
ASSEMBLIES OF GOD, Appellee.

No. 04–89–00404–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 10, 1990.

Rehearing Denied Feb. 2–6, 1990.

Joe Mike Egan, Jr., Kerrville, for appellants.

Karen A. Angelini, Carman M. Garufi, Brock & Mathis, San Antonio, Ross S. Crossland, Naman, Howell, Smith & Lee, Austin, Richard C. Mosty, Wallace, Mosty, Machann, Jackson, & Williams, Emil Karl Prohl, Kerrville, for appellee.

Before BUTTS, PEEPLES and CARR, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a summary judgment against plaintiff Jolene Eckler individually and as next friend of her children. Plaintiff sued the General Council of Assemblies of God ("Defendant") alleging two general causes of action: (1) violations under the Texas Deceptive Trade Practices—Consumer Protection Act, TEX.BUS. & COM.CODE ANN. § 17.41 *et seq.* (Vernon Supp.1989) ("DTPA") and (2) common law negligence. Defendant moved for summary judgment asserting that no legal relationship existed between defendant and the other defendants accused of committing the alleged acts made the basis of this suit. This motion was granted by the trial court.

On appeal plaintiff brings three points of error, that the trial court erred: (1) in denying plaintiff's motion to dismiss the summary judgment motion for failure to comply with TEX.R.CIV.P. 166a(c), (2) in considering the First Amendment guarantee of religious freedom in its decision to grant the summary judgment, and (3) in granting the motion for summary judgment.

In September 1986, the plaintiff mother enrolled her children, Alice and Bobby, in the "First Assembly of God Christian Academy," a school operated under the auspices of the First Assembly of God Church in Kerrville, Texas (the "Local Church"). During the spring semester, the mother discovered three sexually explicit "letters" which she believed were correspondence between Alice and Scott Carrell, the Local Church Youth Minister and Alice's teacher at the time. These letters, along with explicit entries in Alice's diary, led the mother to believe that Scott and Alice were engaging in sexual activities. She took the letters to Reverend W.N. Perkins, minister of the Local Church, asking his assistance. Plaintiff alleged in the petition that during Perkins' investigation, he

and his wife Elva, engaged in conduct which allegedly damaged plaintiff and her children. Suit was brought against defendant, the Assembly of God Churches of Kerrville, Scott Carrell, and Reverend W.N. and Elva Perkins, claiming violations of the DTPA and actionable negligence. An additional claim of slander was filed against Elva Perkins. Within the DTPA allegation, it is asserted that "the Local Church and Reverends Perkins and Carrell ... are *agents* of the National Church." (emphasis added). It is claimed that the Local ·Church and the Reverends are "inextricably intertwined" with appellee, and that the "National Church" is merely a compilation of local churches ("any concept of separateness ... is ultimately one of form"). The negligence claims allege apparent agency and failure to use ordinary care in ordaining and supervising the ministers.

Defendant filed its motion for summary judgment, alleging that (1) no relationship existed between it and the other defendants, (2) defendant is a distinct entity and (3) the congregational polity of the Assemblies of God faith mandates local church sovereignty; and imposition of liability on this defendant for the local church's actions would violate the First Amendment right of religious freedom. The defendant General Council's summary judgment was severed for purpose of finality. Plaintiff brings three points of error.

In point one, it is argued that the trial court erred in denying plaintiff's motion to dismiss the motion for summary judgment motion because defendant failed to comply with TEX.R.CIV.P. 166a(c) (Vernon Supp. 1989), that is, that the motion for summary judgment was not sufficiently specific.

Rule 166a(c) of the Texas Rules of Civil Procedure states that "the motion for summary judgment shall state the specific grounds therefor." The motion must define the issues and put the non-moving party on notice with adequate information to oppose the motion. *See Inwood Forest Community Imp. Ass'n v. RJS Dev. Co., Inc.,* 630 S.W.2d 751 (Tex.Civ.App.—Houston [1st Dist.] 1982, no writ).

The record reflects that the motion sought to negate the causes of action on the grounds that no agency relationship existed and that the local church is an autonomous, separate entity from the General Council. Defendant employed clear and succinct language in the motion. Plaintiff was clearly put on notice as to the grounds. We find that appellee's motion met the specificity requirements of TEX.R. CIV.P. 166a(c). Point one is overruled.

Point two is that the trial court committed error if it considered the First Amendment as a basis for summary judgment. The judgment does not set out its particular basis. The motion for summary judgment alleges that "the imposition of a duty on the part of the General Council to supervise the clergy or churches would affect the Assembly of God's ecclesiastical doctrine or polity and would therefore infringe upon the First Amendment guarantee of religious freedom." As summary judgment proof, an affidavit by Joseph Flower, General Secretary of the General Council, is attached. It states that the Assemblies of God are congregational in polity, meaning an association of sovereign and self-governing. The constitution and by-laws attached as summary judgment proof also show the complete absence of supervisory control, which, in turn, negates a legal relationship, all as alleged in the motion.

We do not find it necessary to reach the question whether the trial court considered the First Amendment since the summary judgment evidence [the affidavit of Flower, the constitution, and by-laws] presented a sufficient basis to support the summary judgment. Point two is overruled.

Plaintiff asserts as point three that the trial court committed reversible error in granting the motion for summary judgment. It is argued, without supporting authority, that defendant failed to negate the existence of a material fact issue which would entitle it to summary judgment. A defendant who moves for summary judgment has the burden of showing as a matter of law, that no material fact issue exists as to the plaintiff's cause of action. *Griffin v. Rowden,* 654 S.W.2d 435, 435–36

(Tex.1983). This may be achieved by showing that at least one element of each of the plaintiffs' causes of action has been established against the plaintiff. *Gray v. Bertrand*, 723 S.W.2d 957 (Tex.1987). Once defendant has negated such elements as a matter of law, plaintiff has the burden of introducing evidence that raises issues of fact with respect to the elements negated by defendants' summary judgment evidence, *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972); *Federated Dept. Stores, Inc. v. Houston Lighting & Power Co.*, 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ).

The court of appeals is required to view the proof in the light most favorable to the nonmovant and to resolve against that party any doubt as to the existence of a genuine issue of material fact. *Mays v. Foremost Ins. Co.*, 627 S.W.2d 230, 233–34 (Tex. App.—San Antonio 1981, no writ).

The record reflects that defendant presented an affidavit from Joseph R. Flower, General Secretary for the General Council, and a copy of the current constitution and by-laws of the General Council as summary judgment evidence. The affidavit from Flower states that "no agency relationship exist[s] between [appellee] and the other defendant entities in this suit," and that defendant is a "separate and independent entity." He describes the Assembly of God faith as "congregational in polity," meaning that the local churches are "sovereign and self-governing." Consequently, defendant has no duty or right to supervise or control these churches. He swore that, although defendant ordains and licenses ministers, it does not supervise, control or monitor their actions. Flower outlined the following procedure for allegations of ministerial misconduct:

> If a complaint is made to the General Council regarding a particular minister of a local church, the General Council refers the matter to the appropriate District Council, which investigates and takes appropriate disciplinary action.

He notes that no complaints have been lodged with the General Council in this case.

The constitution and by-laws support the assertions in Flower's affidavit, and illustrate in detail the powers and limitations of the General Council, the district councils and local churches. The constitution states that the local assemblies have "the right of self-government," that is, the power to choose its pastor, transact business, discipline its members and hold property. The local churches' sovereignty and rights are not destroyed by their affiliation with the General Council. The district council, composed of ordained and licensed ministers within a prescribed district, has supervision over all the activities of the Assemblies of God in its prescribed field. According to the constitution and its by-laws, the district council has significant power in the licensing and ordination process. The district councils "shall have the authority to examine and license ministers ..." and "shall have the authority to examine and ordain ministers after having received approval from (the General Council)...." Although the Credentials Committee of the General Council (consisting of "Executive Presbytery") has the authority to give recognition to ordained ministers, these ministers are first endorsed and recommended by the district council. The Credentials Committee will issue certificate of ordination "to approved ministers *who have district council endorsement ...*" (emphasis added). In addition, district councils have the authority to recommend the recall of credentials. Any complaints filed with the General Council are referred to the districts in which the offense occurred "for investigation and such action as the revealed facts may warrant." Only if the district fails to take action within 90 days after referral can the General Council see that action is initiated. After investigation by the district council, charges are filed in the district office and a hearing is held by the district Credentials Committee. If it is determined that a minister's credentials are to be terminated, the district shall recommend to the Credentials Committee (of the General Council) that his name be removed

from the list of ministers. If satisfied with the recommendation, the Credentials Committee may comply with the request. If the Committee is not satisfied, it shall refer the case back to the district for review. If a dismissed minister wishes to be reinstated, he must apply through the district council within the territory in which the applicant resides, and the application is subject to the approval of the district in which termination was made.

Based on this evidence, defendant asserts that no agency relationship exists because none of the other severed defendants acted on the behalf of the General Council and they are not subject to the General Council's control. Plaintiff presented no summary judgment evidence, other than reasserting the points in her petition as evidence that defendant's motion failed to address all the causes of action.

■ The threshold issue to the determination of the majority of the claims is whether the other defendants were agents of the General Council. An agency relationship exists when there is a consensual relationship between two parties, by which one acts on behalf of another, subject to the other's control. *Neeley v. Intercity Mgmt. Corp.*, 732 S.W.2d 644, 646 (Tex. App.—Corpus Christi 1987, no writ). Under "Count One—Deceptive Trade Practices Act," plaintiff asserts that "the local church and Reverends Perkins and Carrell ... are *agents* of (defendant)...." Defendant, however, negated any allegations of actual agency through its summary judgment evidence showing the lack of supervisory power and the autonomous nature of the local churches. The constitution and by-laws show that no authority is given to the churches or ministers to act on behalf of defendant. Since plaintiff did not contradict this proof by any evidence of express or implied authority, we find that a lack of actual agency is established as a matter of law.

However, plaintiff's allegations also appear to be based on ostensible agency, or apparent authority, as indicated in her repetitive assertions that defendant "held out" the local church and reverends to plaintiff ( ... by holding out to plaintiff that in this particular local church she could and would find a safe depository for her trust ..."). Plaintiff claims that the "holding out" occurred through the ordination and licensing of ministers accepting money from the local churches, use of the "Assembly of God" name by local churches, and publishing the *Pentecostal Evangel*, a religious magazine. In order to establish that an agent had the apparent authority to do the act in question, it must be established (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal. 3 AM.JUR.2d *Agency* § 80 (1986). *See also Ames v. Great Southern Bank,* 672 S.W.2d 447 (Tex.1984).

■ The constitution and by-laws reveal that the alleged methods of "holding out" are not supported by the church's organizational structure. Regarding ordination and licensing, the district council is responsible for the selection and endorsement of prospective ministers. The by-laws indicate that a minister must be endorsed by the district council before the General Council can issue a certificate of ordination. If a complaint is lodged against an ordained minister, the district council is responsible for investigating, filing charges and conducting a hearing. The General Council cannot be informed of a complaint unless it passes through the District Council. Also, ministers who have lost their credentials and wish to become ordained again must make application through the District Council. Based on these unrefuted rules, the District Council, and not the General Council, held out the ministers as having met the criteria for ordination. By plaintiff's close association with the local church

and the Assembly of God religion, it is reasonable to believe that she had notice of these limitations on the General Council's power to ordain and license.

■ The contributions accepted from the local church also did not establish that the defendant was acting in an apparent agency relationship with the local churches. The by-laws show that these contributions are not mandatory, but that "... it is *recommended* that each church send to the General Council at least one offering for each calendar year...." The contributions are utilized for administrative purposes in "fulfilling [the] threefold mission" of the Assemblies of God religion. This type of elective contribution would not reasonably lead a prudent person to believe that the local church was an agent of the General Council. *See Ames*, 672 S.W.2d at 450. Moreover, there is no assertion in the petition that plaintiff relied upon this conduct, or was even aware that these contributions were given to defendant. *See Id.* Consequently, the doctrine of apparent authority could not be based on these acts.

■ Plaintiff also claims apparent agency through the local church's use of the "Assembly of God" name, as allegedly permitted by defendant. If plaintiff complained about the authorized use of the name "Assembly of God" by the local church, this claim is negated by the constitution and the by-laws. The constitution states that "membership in the Assemblies of God shall consist of ... churches affiliated with the General Council ... and its district councils." However, it goes on to state that affiliation with the General Council shall not destroy the local church's sovereignty or its right to self-government and to select its own pastor. Consequently, mere authorized use of the "Assembly of God" name is not sufficient proof that would lead a reasonably prudent person to believe that the local church was an agent of defendant. *See Ames*, 672 S.W.2d at 450. The local church's autonomy is not affected by the authorized use of "Assembly of God," and no apparent agency arises from this use.

■ Regarding the *Pentecostal Evangel*, the official publication of the General Council, the by-laws state that the purpose of this publication is to spread "the gospel," fulfill church missions, emphasize the religious beliefs and strengthen "the Fellowship." The by-laws do not indicate that the *Pentecostal Evangel* makes representations about the local church in any way, but only publicizes the doctrine of the Assembly of God religion. This does not constitute a sufficient "holding out" which would generate a reasonable belief that the local church was an agent of defendant.

In addition to the allegations of apparent agency which have been negated by the summary judgment proof, the petition suggests that defendant, the ministers and the local church are one entity. It is alleged that the local church and the reverends "were the same as or ... agents for [defendant]." As already noted the by-laws and constitution clearly define the autonomy of the local church and the separate functions of defendant. The movant established as a matter of law that it is separate from the local church and its ministers and that no "apparent agency" exists, thereby negating crucial elements in the alleged causes of action.

■ Plaintiff also urges under the heading of DTPA violations, that the defendants are "inextricably intertwined," claiming this as an independent cause of action. "Inextricably intertwined" is not an additional theory of vicarious liability under the DTPA. *Qantel Business Systems, Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 305 (Tex.1988). The DTPA does not recognize or envision the expansion of common law theories of vicarious liability to include "inextricably intertwined," or the mere existence of a "relationship" between the parties. *Id.* Plaintiff must show that defendant has actually committed a deceptive act. *Home Savings Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987). Consequently, no cause of action exists under this claim.

All the remaining allegations under the DTPA assert that defendant committed the acts by initially "holding out" the local church and the reverends. Since "inex-

tricably intertwined" is not a recognized cause of action, and defendant's summary judgment proof has negated the possibility of actual agency, apparent agency or inseparability, we find that defendant's summary judgment evidence proved as a matter of law that plaintiff has no cause of action under the DTPA theories. *See Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ.App.—Amarillo 1979, no writ). Thereafter, plaintiff in her response raised no issue of fact with respect to the elements negated by defendant so as to preclude the granting of summary judgment. *"Moore" Burger, Inc.,* 492 S.W.2d at 936.

Plaintiff's second count contains various acts of common law negligence. She again alleges apparent agency, which we have determined to be negated by the summary judgment proof. Agency by estoppel is raised as a claim; however, since agency by estoppel is not significantly different from apparent agency, *see* 3 AM.JUR.2d *Agency* § 81 (1986), it is likewise negated. Plaintiff's only claim which is not based on acts of agency is her assertion that defendant failed to use ordinary care in ordaining Reverend Perkins and licensing Reverend Carrell and failed to use ordinary care to supervise their activities, and that these acts were a proximate cause of her injuries.

Before it can be said that an act of negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act of negligence, and that the party committing the act ought reasonably to have foreseen such consequences in light of the attending circumstances. *Phoenix Refining Co. v. Tips,* 81 S.W.2d 60, 61 (Tex.Comm'n App.1935, opinion adopted) (citations omitted). Consequently, proximate cause consists of two elements: (1) cause in fact and (2) foreseeability. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546 (Tex.1985). Cause in fact means that the act was a substantial factor in bringing about the injury and without which no harm would have occurred. *Texas & Pacific Ry. Co. v. McCleery,* 418 S.W.2d 494, 497 (Tex.1967). Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the danger to oth-

ers created by his negligent act. *Clark v. Waggoner,* 452 S.W.2d 437 (Tex.1970).

▮ Plaintiff alleges that "the continuing duty to insure that its ministers are represented—and apparently, the original screening prior to ordination— ... has been performed by [defendant] with less than ordinary care." However, defendant's summary judgment proof shows the act of issuing a certificate of ordination was not the proximate cause of plaintiff's injuries. The by-laws and constitution demonstrate that the District Council has primary responsibility for the endorsement, ordination and supervision of ministers. The District Council recommends and endorses potential ministers.

The District Council plays the dominant role in the pre-ordination selection and post-ordination complaints. Consequently, it would be impossible for defendant to foresee any danger created by its ordination of ministers, unless the District Council makes it aware of previously known problems. Plaintiff did not offer evidence that defendant had been notified of problems before ordaining the ministers. Without the element of foreseeability of possible improprieties, ordination could not be the proximate cause of plaintiff's injuries.

Defendant exercises no supervisory powers over the local ministers except to see that the District Council investigates any known complaints. Once ordained, it is the District Council's responsibility to investigate complaints and bring charges against the ministers. The General Council is not responsible for the day-to-day oversight of the ministers, and is not aware of any wrongdoing until the local church reports it to the District Council. If it is first reported to the General Council, the case must be sent to the District Council for investigation. As Flower testified in his affidavit, no complaints in this case had been made to defendant; no consequent duty arose. Without this preexisting duty, it is impossible that lack of supervision by defendant was a substantial factor in causing plaintiff's injuries. No actionable negligence claim can exist without a preexisting duty.

*El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex.1987).

We find that defendant has negated the negligence claims as a matter of law by disproving the existence of actual agency, apparent agency (or agency by estoppel) and proximate cause. Since plaintiff did not meet this evidence with controverting summary judgment proof that raised issues of fact regarding these elements of her causes of action, the summary judgment was proper. The third point is overruled.

The judgment of the trial court is affirmed.