Marjorie Sue EOFF and Milton W. Eoff, Appellants,

v.

HAL AND CHARLIE PETERSON FOUNDATION d/b/a Sid Peterson Memorial Hospital, Appellee.

No. 04–89–00417–CV.

Court of Appeals of Texas, San Antonio.

May 15, 1991.

Marynell Maloney, Maloney & Maloney, P.C., San Antonio, for appellants.

John Milano, Jr., Robert R. Biechlin, Jr., Mary J. Ibarra, Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for appellee.

Before REEVES, C.J., BIERY, J., and CADENA, C.J. (Retired).

## OPINION

REEVES, Chief Justice.

This appeal considers the liability of a hospital for alleged acts of negligence, violation of the Texas Deceptive Trade Practices Act (DTPA),[1] and the alleged negligence of a physician working in the hospital's emergency room. Appellants/Plaintiffs are Mrs. Marjorie Sue Eoff and her husband, Milton W. Eoff. Appellee/Defendant is the Hal and Charlie Peterson Foun-

---

1. TEX.BUS. & COMM.CODE § 17.41 et seq. (Vernon 1987).

dation, d/b/a Sid Peterson Hospital (the hospital).

The hospital was awarded a partial summary judgment in which the trial court found that the DTPA did not, as a matter of law, apply to this case.

A jury found that Mr. and Mrs. Eoff were negligent and attributed 65 percent of the cause to Mrs. Eoff and 35 percent to Mr. Eoff. The jury also found that no acts of negligence were attributable to the hospital. We affirm the judgment of the trial court.

Mrs. Eoff went to the emergency room of the hospital on April 21, 1985 complaining of chest pain. She was treated by the emergency room physician, Dr. Ted Samsel. He recorded his impression of her condition as "angina versus esophagitis", based on negative results from cardiac testing, cardiac blood tests, EKG results, chest x-rays, and diminishing symptoms. Mrs. Eoff was released with the recommendation that she see her family physician, Dr. Dan Bacon. Mrs. Eoff returned to the hospital on April 28, 1985 with the same complaint. Once again, she was treated by Dr. Samsel who conducted some of the same tests as the week before. He released Mrs. Eoff and reiterated his recommendation that she see Dr. Bacon.

Mrs. Eoff saw Dr. Bacon after her second hospital visit. He referred her to the Scott & White Clinic in Temple (the clinic) for a complete examination. At the clinic she was examined by Dr. Hajra, a cardiologist. Dr. Hajra conducted a series of cardiac tests which included an EKG as part of a cardiac ultrasound test. A stress test was scheduled for the following week. The EKG revealed that Mrs. Eoff was undergoing ischemic changes in her cardiovascular system. It was Dr. Hajra's impression that she had suffered a "chest wall injury". Mrs. Eoff was discharged on May 2, 1985.

That same evening she began to experience more pain. At approximately 8:50 a.m. on the morning of May 3, 1985, as the pain continued, Mr. Eoff took his wife to the home of her friend, Mrs. Doris Wood. Mr. Eoff then went to work. Later that morning Mrs. Eoff was taken to the hospital's emergency room by Mrs. Wood and another friend, Mrs. Bonnie Ball.

Once at the hospital, an alleged altercation took place between Mrs. Eoff and a member of the hospital's personnel. Mrs. Eoff maintains that she was approached by a nurse who said, "Oh its you again. Well, there isn't anything we can do except run the same tests that we have run on you before and they are all negative and until we find something, there's nothing we can do for you." Mrs. Eoff and Mrs. Wood identified Mary Jean Cory as the nurse who made this statement. Nurse Cory denied this accusation. Mrs. Ball testified to the altercation. She identified a second individual, Nancy Keith, as the nurse who made the statement. Nurse Keith also denied this accusation.

After waiting approximately eighteen minutes, Mrs. Eoff left the hospital without receiving treatment. Mrs. Wood and Mrs. Ball both testified that Mrs. Eoff made the decision to leave the hospital. Mrs. Eoff stated that she did not want to be left in the hospital to die and wanted Mrs. Wood to take her home. They took Mrs. Eoff back to Mrs. Wood's home. Mrs. Eoff's condition worsened throughout the day.

Dr. Boyce, Dr. Bacon's partner, testified that he was contacted by Mr. Eoff at approximately 5:00 p.m. that evening. Dr. Boyce stated that Mr. Eoff explained that his wife was having chest pains and requested that he examine her. Dr. Boyce replied that his office was closed. He suggested that Mr. Eoff take his wife to appellee's emergency room. Mr. Eoff declined, explaining his wife's prior visit to the hospital that morning. Mr. Eoff also contacted the clinic but could not gain admittance there.

Mrs. Eoff's condition continued to deteriorate. She was taken to Humana Hospital in San Antonio, Texas. She arrived at Humana at approximately 7:30 p.m. where she was diagnosed as being in the midst of a massive heart attack.

The Eoffs assert that the jury's failure to find negligence on behalf of the hospital

and the attending emergency room physician, Dr. Ted Samsel is contrary to the overwhelming weight and preponderance of the evidence. They also contend there was insufficient evidence to support the jury's finding that the negligence of Mr. and Mrs. Eoff proximately caused the injury to Mrs. Eoff.

■ Where the factual sufficiency of the evidence is raised, we will sustain the jury's finding unless it is found that the answer to the question challenged is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986).

■ We will first consider the negligence of Mr. and Mrs. Eoff. There is evidence that Mrs. Eoff failed to exhaust available alternatives for medical care; that she voluntarily left the hospital before receiving treatment; that Mr. and Mrs. Eoff ignored the advice of Dr. Ted Boyce to return to appellee's emergency room; and that they failed to obtain medical care until approximately seven hours after leaving the emergency room. We have determined that there is sufficient evidence to sustain the jury's finding that Mr. and Mrs. Eoff were negligent.

■ Our review of the evidence leads us to the conclusion that the jury's finding that Dr. Samsel and the hospital were not negligent is not against the great weight and preponderance of the evidence. When Mrs. Eoff went to the emergency room on April 21, 1985, Dr. Samsel ran tests to determine the reasons for her chest pains. His interpretation of the tests lead him to conclude that her pain did not result from a cardiac condition. Dr. Samsel discharged Mrs. Eoff with a tentative diagnosis of "angina v. esophagitis". He advised her to see her family physician the next day and to return to the emergency room if she experienced any difficulty. The following Sunday, Mrs. Eoff returned to the emergency room and was again seen by Dr. Samsel. He conducted some of the same tests which were again, in his opinion, neg-

ative. He reiterated his suggestion that she contact her family physician.

There was testimony from other physicians that there are many causes for chest pain other than cardiac complications. Dr. Samsel had seen Mrs. Eoff on prior occasions for gastrointestinal disturbances. The Eoffs and the hospital both had medical doctors testifying on their behalf. Some approved of the treatment provided by Dr. Samsel, while others disapproved. The jury's finding that Dr. Samsel and the hospital were not negligent is supported by the record.

■ Prior to trial the Eoffs filed a motion requesting an instruction to the jury that any evidence admitted against two of their witnesses, Bonnie Ball and Doris Wood, not be considered for the purpose of proving their negligence, nor could evidence of the their negligence be considered to reduce or exonerate the hospital of liability. The Eoffs reasoned that the witnesses could not be liable for assisting Mrs. Eoff during the occurrence at issue because of the protection afforded them by the Good Samaritan Law, TEX.CIV.PRAC. & REM. CODE ANN. § 74.001.

(a) A person who in good faith administers emergency care at the scene of an emergency or in a hospital is not liable in civil damages for an act performed during the emergency unless the act is wilfully or wantonly negligent.

An "emergency" is a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or omission of the person in question and which calls for immediate action on his part and without time for deliberation. *Goolsbee v. Texas & N. O.R. Co.*, 243 S.W.2d 386, 388 (Tex.1951).

Mr. Eoff took his wife to Mrs. Wood's house because he did not want to leave her at home alone while he was at work. When it was decided that Mrs. Eoff needed hospitalization, Mrs. Ball drove her to the emergency room accompanied by Mrs. Wood. It was upon the request of Mrs. Eoff that after approximately eighteen minutes at the hospital, she be taken back

to Mrs. Wood's home. She remained there until she was taken to Humana hospital in San Antonio.

*Dahl v. Turner*, 458 P.2d 816 (N.M.Ct. App.1969, *cert. denied*) presents an analogous situation. Dahl wrecked his automobile. Turner stopped at the scene of the accident and assisted Dahl in picking up some of his belongings that had evidently been thrown from his car and scattered along the highway. Dahl appeared to be unharmed, except for a cut on his arm. Although there was evidence that he was unaware that his car had rolled over during the accident. Dahl refused medical attention. Instead he expressed a desire to be taken to a friend's house in the next town. Turner was traveling in that direction, and she agreed to give Dahl a ride. In route, Turner was involved in an automobile accident and Dahl sued her for injuries sustained. Turner asserted that a fact issue was raised under New Mexico's Good Samaritan Statute.[2] The Court held that the only care that was administered to Dahl was that of transportation, and if Turner was administering "care," it was not emergency care within the statute.

■ Similarly, we see no application of the Good Samaritan Statute in the instant case. The assistance of the two witnesses in transporting Mrs. Eoff to the emergency room and their subsequent assistance do not constitute care as contemplated by the statute, and certainly not emergency care. At the most, it might be considered a fact issue to be determined by the trier of the facts. *See Del Bosque v. Heitmann Bering–Cortes Co.*, 474 S.W.2d 450, 453 (Tex. 1971); 2 D. LOUISELL & H. WILLIAMS, MEDICAL MALPRACTICE § 21.318 (1975). This point of error is overruled.

■ The Eoffs contend they were entitled to an instruction on "sole proximate cause." This request was predicated on the possibility that the jury might find acts of Bonnie Ball, Doris Wood and other witnesses involved as negligent. Their negligence would reduce the amount of damages awarded to the Eoffs. The Eoffs theorized that the comparative negligence statute, TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 et seq. requires the instruction. The purpose of the comparative negligence statute is to prorate the damages awarded a plaintiff among those who negligently caused the incident. Since the jury attributed one hundred percent of the negligence to the Eoffs, it is not necessary that this point of error be addressed.

■ The Eoffs contend the trial court erred in submitting "new and independent" cause as an inferential rebuttal instruction because there was no evidence to submit the instruction. An instruction is proper if it finds support in any evidence and the inferences to be drawn therefrom and if the instruction might be of some aid or assistance to the jury in answering the questions submitted. *Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 187 (Tex.App.—San Antonio 1983, writ ref. n.r.e.). The trial court has considerable discretion in deciding what definitions and instructions are necessary and proper. The standard of review is that of abuse of discretion. TEX.R.CIV.P. 277; *Green Tree Acceptance, Inc. v. Combs*, 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied). The term "new and independent cause" has been defined as "the act or omission of a separate and independent agency, which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes, in itself, the immediate cause of such injury." *Phoenix Refining Co. v. Tips*, 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *See also Eckler v. General Counsel of Assemblies of God*, 784 S.W.2d 935, 941 (Tex.App.—San Antonio 1990, writ denied); *Green Tree Acceptance, Inc.*, 745 S.W.2d at 89. Such cause contemplates that an independent force rather than the negligent acts of the par-

---

**2.** New Mexico has a similar "Good Samaritan Statute." N.M.S.A 1953. § 12–12–3 provides, in part: No person who shall administer emergency care in good faith at or near the scene of an emergency ... shall be held liable for any civil damages ... § 12–12–4 defines emergency to mean: ... an unexpected occurrence involving injury or illness to person, including motor vehicle accidents ...

ties was responsible for such injuries. *Galvan v. Fedder,* 678 S.W.2d 596, 598 (Tex.App.—Houston [14th Dist.] 1984, no writ). The following instruction was given:

"NEW AND INDEPENDENT CAUSE," means the act or omission of a separate and independent agency not reasonably foreseeable by an *emergency physician [hospital]* exercising ordinary care, which destroys the causal connection, if any, between the act or omission inquired about and the injury in question, and thereby becomes the immediate cause of such injury.

In justification of the trial court's instruction, appellee submits that the first evidence of possible injury to Mrs. Eoff occurred during the examination at Scott & White, prior to the incident giving rise to this cause of action. The Eoffs' cause of action is based upon the conduct of the people staffing the emergency room on May 3, 1985. The only other evidence in support of the instruction offered by appellee is the testimony of Dr. Bailey that the heart attack did not occur until shortly after she arrived at the Humana Hospital in San Antonio. This cannot be considered evidence to support the instruction. If the hospital negligently caused the damage by failing to treat Mrs. Eoff, it would be responsible for the damages flowing from that failure to act. *See Galvan,* at 598. Neither of these events could destroy the causal connection between the act and the injury alleged, which is the failure to treat Mrs. Eoff on the morning of May 3, 1985.

We are of the opinion that there was no evidence to warrant the submission of the instruction "new and independent cause". However, we find that the giving of the instruction was harmless error. TEX.R.APP.P. 81(b)(2). The jury found one hundred per cent of the Eoffs' negligence proximately caused the injury to Mrs. Eoff. Therefore, the instruction of new and independent cause limited to an emergency room physician could not have caused the Eoffs harm.

The Eoffs presented an oral motion in limine to exclude admission of a letter written to Dr. Bacon by their attorney. The letter concerned the fee charged for taking Dr. Bacon's deposition. The motion also objected to other parts of the letter as either not pertinent or collateral to the case. They further asserted that the probative value of the evidence could not outweigh its prejudicial effect. The Eoffs previously stipulated to assertions of negligence in the letter.

Although Dr. Bacon was Mrs. Eoff's personal physician, he was the hospital's witness. Originally, Dr. Bacon was a defendant in this suit. He was later non-suited at the insistence of the Eoffs. Perhaps it was for that reason that a copy of the letter was also mailed to the Eoffs. The letter, which was read in open court, states in pertinent part:

... After having failed to run any test, after having failed to diagnose Mrs. Eoff's condition and finally after your associate refused to even see Mrs. Eoff on the afternoon of her heart attack ... you should be thankful that you are not still a party to this suit (which you would be but for the Eoff's insistence that we drop you). Mrs. Eoff received lousy medical care from the beginning to the end of her devastating experience. The worse part is that you know it today, just as you knew it when the date you gave your deposition and said that her medical care was just fine, and then you bill her $1,200.00 for this additional breach....

The portion of the letter speaking to the fault of the doctor is certainly relevant and admissible. TEX.R.CIV.EVID. 402. It is within the discretion of the trial court to determine whether the probative value of evidence substantially outweighs the danger of unfair prejudice, confusion of the issues or misleading the jury. TEX.R.CIV. EVID. 403. We find no abuse of discretion in submitting that portion relating to the alleged negligence of Dr. Bacon. We agree with the Eoffs that the part of the letter appearing to criticize the amount of the fee should not have been read to the jury. However, the error, if any, is certainly not reversible error. TEX.R.APP.P. 81(b).

The Eoffs claim error because the jury did not answer the damage issue. Since the findings of liability are adverse to the Eoffs, the jury's failure to answer the damage question is immaterial. *Turner v. Lonestar Indus., Inc.*, 733 S.W.2d 242, 246 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

■ The Eoffs contend the trial court erred in not permitting them to impeach a nurse, Mary Jean Cory, with a statement of her former son-in-law, Philip H. Furman, made during his voir dire examination. They also contend error in the refusal of the trail court to permit them to impeach Mr. Furman with his sworn voir dire testimony.

At a bench conference the record discloses that Mr. Furman talked to Mrs. Cory about the pending case. He testified that he was sure it was the "same situation". He then stated, "Well, I have had conversation about this lady being a problem and to the point that nobody paid attention to her." Mr. Furman was challenged for cause and excused from serving on the jury.

Mr. Furman was later subpoenaed by the Eoffs for the purpose of impeaching Mrs. Cory. The trial court denied them the right to examine Mr. Furman on his statement made at the bench conference. TEX. R.CIV.EVID. 607 states that the credibility of a witness may be attacked by any party. TEX.R.CIV.EVID. 613(a) provides, in pertinent part,

> In examining a witness concerning a prior inconsistent statement made by him, whether oral or written, and before further cross examination concerning ... such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement.

The Eoffs attempted to lay their predicate for this impeachment testimony by asking the following questions:

Q: Okay, are you aware that your son-in-law gave a sworn statement to the Judge and the attorneys in this case to the effect of Well I have had conversation about this lady being a problem and to the point that nobody paid attention to her. I just—I think—? Are you aware that he said that?

A: No.

Q: Is it wrong?—

Mrs. Cory: If he said I said anything, it is incorrect. If I—If he's saying I said it.

Q: Well, let me start with what he first says. On page 2 of his transcript testimony that's already been made an exhibit to my Bill he says under oath "My mother-in-law is Mary Jean Cory and I have had a conversation with her about an incident that occurred that is similar to what she's talking about where you took her deposition. I think maybe I'm colored in my opinion maybe." ...

The Eoffs did not inform Mrs. Cory of the time or place of the alleged conversation with Mr. Furman, nor did they attempt to elicit this information from Mr. Furman. The court did not err in disallowing the testimony.

■ The Eoffs contend that the trial court abused its discretion by permitting the hospital's counsel to use confidential information to impeach, Doris Wood, an independent witness. Mrs. Wood testified in detail and at length regarding the events that lead up to Mrs. Eoff's heart attack. In her deposition she testified that she did not have any memory problems and that she had not experienced any such problems in the past.

On cross-examination she affirmed this testimony. During her cross-examination Mrs. Wood's testimony was impeached by the introduction of her hospital records. These records showed that Mrs. Wood had sought medical treatment for memory loss within five months of the incident at issue. Mrs. Wood did not object to the use of her records and she did not have an attorney or physician present to object on her behalf.

TEX.R.CIV.EVID. 509 provides:

Records of the identity, diagnosis, evaluation, or treatment of a patient by a

physician that are created or maintained by a physician are confidential and privileged and may not be disclosed.

The physician-patient privilege may only be claimed by the patient, her physician or her representative but only on the patient's behalf. TEX.R.CIV.EVID. 509(c)(1), (2). While this general rule of privilege applies, it was not properly claimed. The Eoffs' counsel objected to the introduction of the records. The trial court asked counsel if she represented the witness, to which she responded that she did not. Because the attorney did not represent Mrs. Wood she was not qualified to claim the privilege. Mrs. Wood did not claim the privilege on her own behalf, thus it was waived.

The Eoffs contend the trial court erred in granting a partial summary judgment in their deceptive trade practices claim against the hospital. The Eoffs allege a breach of an implied warranty in violation of the TEX.BUS. & COM.CODE ANN. § 17.41 et seq., DTPA. They allege the hospital "breached an implied warranty to provide emergency room services in a good and workmanlike fashion, and to provide, impliedly, services in a professional manner ...".

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985).

 The motion for a partial summary judgment alleged that, as matter of law, a DTPA cause of action was not available because of the prohibition in the Medical Malpractice and Insurance Liability Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590(i), Subchapter L, § 12.01(a). It provides:

> Notwithstanding any other law, no provisions of § 17.41–17.63, Business and Commerce Code, shall apply to physicians or health care providers as defined in § 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted from *negligence* on the part of

any physician or health care provider. [emphasis added]

The hospital is a health care provider as defined in § 1.03 of article 4590(i). Since the DTPA claim of appellants is that of implied warranty, this provision does not apply to this cause of action. However, this does not answer the question of whether a hospital impliedly warrants its services.

In support of this contention, the Eoffs rely on, *Archibald v. Act III Arabians*, 755 S.W.2d 84 (Tex.1988) (improper horse training services); *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex.1987) (unworkmanlike mobile home repairs); *Thomas v. St. Joseph Hosp.*, 618 S.W.2d 791 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd. n.r.e.) (distribution of defective hospital gown); *Providence Hosp. v. Truly*, 611 S.W.2d 127 (Tex.Civ.App.—Waco 1980, writ dism'd) (sale of contaminated drugs). The cases cited by appellant are instructive, yet they are distinguishable.

In *Melody*, the purchasers ordered a prefabricated mobile home which was structurally defective. They notified the manufacturer of the defect and repairmen were sent to correct the problem. The repairmen conducted their work in a shoddy manner and caused additional damage in the process. The Court held "that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to consumers suing under the DTPA." *Melody*, 741 S.W.2d at 354.

In *Thomas*, the DTPA claim was asserted on behalf of a patient whose hospital gown ignited when he dropped a lighted match. The appellant argued that there was no public policy to support immunity for a hospital that supplies a defective product not integrally related to the professional services which it renders. The supreme court agreed and reasoned that a hospital could be liable for the distribution of a harmful product. In this instance a defective hospital gown. *Thomas*, 618 S.W.2d at 796–97.

Similarly, in *Providence* liability was found where a hospital distributed contam-

inated medication. The court held that a claim under DTPA would apply to a claim based on the injection of a contaminated drug, where there was a sale of the drug to the patient by the hospital. *Providence*, 611 S.W.2d at 132.

In *Archibald*, the Court determined that the implied warranty of good and workmanlike performance applied to horse training services. The Court considered the dispositive issue was whether this case was covered by the implied warranty enunciated in *Melody*. The warranty there was extended to a broad range of services "involving the repair or modification of existing tangible goods or property." *Id.* at 354. The term "existing tangible goods" is a general reference to all moveable personal property other than money. *See* TEX. BUS. & COMM.CODE ANN. § 2.105 (Vernon 1967). The Court concluded that a horse was within the meaning of "existing tangible goods or property" and thus the warranty applied. *Archibald*, 755 S.W.2d at 86.

Each of the aforementioned cases addresses the issue of the application of an implied warranty to a service. While our courts have recognized such a warranty as applied to services, those services have been limited to existing tangible goods or property. The present case presents a complaint of lack of immediate medical attention. The DTPA does not provide a cause of action in this instance because an implied warranty does not extend to a hospital when the act complained of is the rendition of the personal service of medical care. *See Dennis v. Allison*, 698 S.W.2d 94, 96 (Tex.1985).

In *Dennis* the Court discusses the development of implied warranty as a strict liability concept. The Court addresses the issue of whether persons receiving professional medical treatment have a remedy to redress wrongs committed during the course of treatment or whether it is necessary to impose a cause of action that would create liability without fault.

It is reasoned that the policies which support strict liability are not present in medical treatment. The patient can determine who is responsible for his injury and is provided with adequate remedies to redress wrongs which may occur during treatment, thus the theory of implied warranty does not apply. *Dennis*, 698 S.W.2d at 95–96; *Forestpark Enters. v. Culpepper*, 754 S.W.2d 775, 779 (Tex.App.—Fort Worth 1988, writ denied). The trial court was correct in sustaining the summary judgment.

■ The Eoffs contend that the trial court erred in refusing to admit evidence of subsequent remedial measures for the limited purpose of showing ownership and control. Following the events of 1985, the hospital placed a sign in their emergency room notifying patients that physicians in the emergency room were not employees of the hospital. The trial court refused to admit this evidence, characterizing the placement of the sign as a subsequent remedial measure which was inadmissible pursuant to TEX.R.CIV.EVID. 407(a).

TEX.R.CIV.EVID. 407(a) provides:

When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measure is not admissible to prove negligence or culpable conduct in connection with the event ...

There is an exception to this rule. If evidence of subsequent remedial measures is offered for another purpose it will be admissible if that purpose is in controversy.

The Eoffs' stated purpose for proffering such testimony was to show ownership and control. It was undisputed that the hospital was the owner of the emergency room. The issue of the agency and control of Dr. Samsel was a factor in an attempt to fix liability on the hospital. The purpose of the sign was to disaffirm the hospital's right to control physicians. The court properly excluded the evidence. TEX. R.CIV.EVID. 403.

■ The Eoffs contend the trial court erred by failing to separate the questions of agency by estoppel and apparent agency. The trial court presented both theories in a hybrid question of agency by estoppel.

The error, if any, is harmless. TEX. R.APP.P. 81(b)(1). The jury found that Dr. Samsel was not negligent. Therefore, whether he was an agent or not is irrelevant. *See Southern Pine Co. v. Andrade,* 124 S.W.2d 334, 345 (Tex.Comm.App.1939, opinion adopted), *Sinko v. City of San Antonio,* 702 S.W.2d 201, 208 (Tex.App.— San Antonio 1985, writ ref'd n.r.e.).

■ The Eoffs assert error in permitting character witnesses' testimony bolstering Dr. Theodore Samsel's ability as an emergency room physician. Generally, the credibility of a witness may be supported only by showing his general reputation for truthfulness or untruthfulness. TEX. R.CIV.EVID. 608. On cross examination, Dr. Samsel was questioned in regard to his preparation, experience, and ability to engage in emergency medical care. In response, the hospital called several physicians who testified that Dr. Samsel's reputation as an emergency physician was good. The character of Dr. Samsel was placed in issue by the Eoffs, therefore the hospital had a right to respond. TEX. R.CIV.EVID. 405(b).

■ The Eoffs contend that the trial court erred in refusing to allow them to introduce evidence of the hospital's liability insurance after a witness for the hospital testified that the hospital was a charitable institution. Evidence of liability insurance is not admissible to establish whether one has acted negligently. It will only be admissible when offered for some other purpose such as to show proof of agency, ownership, or control, if disputed, or the bias or prejudice of a witness. TEX.R.CIV. EVID. 411. The fact that a hospital is a non-profit charitable institution has nothing whatsoever to do with its liability for damages. The testimony may have been relevant but it did not open the door to the issue of whether the hospital carried liability insurance.

In their final point of error, the Eoffs maintain that the totality of errors asserted, when considered cumulatively, rise to reversible error. The burden of showing such error is upon the Eoffs. TEX. R.APP.P. 81(b), *Mercy Hosp. of Laredo v.*

*Rios,* 776 S.W.2d 626, 637–38 (Tex.App.— San Antonio 1989, writ denied). They have failed to show error. This point is overruled.

The judgment of the trial court is affirmed.

CADENA, C.J. (Retired), not participating.