ACCEPTED
141400604-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
4/28/2015 10:53:56 PM
CHRISTOPHER PRINE
CLERK

# No. 14-14-00604-CV

*On Appeal to the Fourteenth Court*
*Of Appeals*
*Houston, Texas*

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

4/28/2015 10:53:56 PM

CHRISTOPHER A. PRINE
Clerk

---

Bridgestone Lakes Community Improvement
Association, Inc.
*Appellant*

v.

Bridgestone Lakes Development Company, Inc., et al
*Appellees*

---

ON APPEAL FROM CAUSE NO. 2011-53723-CV
IN THE 152nd DISTRICT COURT OF
HARRIS COUNTY. TEXAS

---

APPELLANT'S BRIEF

---

Michele Barber Chimene
THE CHIMENE LAW FIRM
TBN 04207500
15203 Newfield Bridge Ln.
Sugar Land, TX. 77498
PH: (713) 474-5538; No fax

michelec@airmail.net

M. Susan Rice
M. SUSAN RICE, P.C.
TBN 10393380
39340 IH-10 West, Ste. D
Boerne, TX. 78006
PH: (713) 823-1092
FAX: (713) 840-1597

srice@msricelaw.com

**Oral Argument Requested**

No. 14-14-00604

## IDENTITY OF PARTIES

APPELLANT:

Bridgestone Lakes Community Improvement Association, Inc.

TRIAL COUNSEL FOR APPELLANT:

M. Susan Rice
39340 IH-10 West, Suite D
Boerne, TX. 78006

APPELLATE COUNSEL FOR APPELLANT:

M. Susan Rice
39340 IH-10 West, Suite D
Boerne, TX. 78006

Michele Barber Chimene
15203 Newfield Bridge Ln.
Sugar Land, TX. 77498

APPELLEES:

Robert A. Hudson
Claudia J. Hudson
Tiffany A. Roath
Bridgestone Lakes Development Company, Inc.

TRIAL AND APPELLATE COUNSEL FOR APPELLEES:

Joseph Allen Callier
Callier & Garza, LLP
4900 Woodway, Ste. 700
Houston, TX. 77056

The trial judge was the Hon. Robert Schaffer of the 152nd Judicial District Court.

# TABLE OF CONTENTS

## Contents

IDENTITY OF PARTIES.................................................................................................i

TABLE OF CONTENTS............................................................................................... ii

INDEX OF AUTHORITIES........................................................................................ iv

STATEMENT OF THE CASE....................................................................................... v

STATEMENT ON ORAL ARGUMENT.................................................................... vii

ISSUES PRESENTED FOR REVIEW ...................................................................... vii

STATEMENT OF FACTS ............................................................................................ 1

SUMMARY OF ARGUMENT ..................................................................................... 5

APPELLANT'S ARGUMENTS .................................................................................... 6

   FIRST ISSUE.............................................................................................................. 6

      The trial court commited reversable error when it granted Summary
Judgment on the variable slopes of the pond's sides, as the claims concerning the variable
slopes were not raised in the motion for summary judgment............................................... 6

   STANDARD OF REVIEW ........................................................................................ 7

   ARGUMENT & AUTHORITIES ON FIRST ISSUE.............................................. 7

SECOND ISSUE ........................................................................................................ 10

      The trial court's denial of a Motion for Rehearing and Motion for New
Trial was an abuse of discretion because the Second
Motion for Rehearing and Motion for New Trial showed that
Plaintiff's claims were not patently unmeritorious and that once
allowed discovery, they were able to raise fact issues on the elements
of duty and causation. .............................................................................................. 10

   STANDARD OF REVIEW ...................................................................................... 10

   ARGUMENT & AUTHORITIES ON SECOND ISSUE.................................... 111

   THIRD ISSUE ......................................................................................................... 19

      The trial court's grant of the No Evidence Summary Judgment (CR 97) was harmful error because,
at the time it was granted, the Fourth Amended Petition (CR SUPP 492) was the live pleading, and
Plaintiffs had raised a fact issue of the elements of duty and causation (CR SUPP2 27) attacked by
Defendants' Motion for No Evidence Summary Judgment.     (CR SUPP 164). ............................. 19

   STANDARD OF REVIEW ...................................................................................... 19

   ARGUMENT & AUTHORITIES ON THIRD ISSUE ....................................... 20

    1.Collateral Estoppel.................................................................................................20

    2.Duty & Causation Evidence ...................................................................................22

FOURTH ISSUE ..........................................................................................................24

    The trial court's award of $94,990.73 in indemnity was excessive, and harmful error. .....................24

STANDARD OF REVIEW ............................................................................................24

ARGUMENT & AUTHORITIES ON FOURTH ISSUE.......................................................25

CONCLUSION & PRAYER ..........................................................................................27

CERTIFICATE OF COMPLIANCE…………………………………………………… 27

CERTIFICATE OF SERVICE……………………………………………………………28

APPENDIX

# INDEX OF AUTHORITIES

## Cases

*Bodin v. Tenneco Oil Co.*, 373 S.W. 2d 350 (Tex. App- Corpus Christ 1963, writ ref'd n.r.e.)............ 12

    *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898 (Tex. 1988) ................................10

*Clark v. Pruitt*, 820 S.W.2d 903 (Tex. App. --Houston [1st Dist.] 1991, no writ)……………………….6, 8

*Cole v. G.O. Assoc., Ltd*, 847 S.W.2d 429 (Tex. App. – Fort Worth 1993, writ denied) ......................19,21

*Desert Palm Properties, N.V. v. McFarlane*, No. 01-92-00967-CV, 1994 Tex. App. LEXIS 2951 (Tex. App. – Houston [1st Dist.] Dec. 8, 1994, writ denied) ..........................................................................9

*Direct Value, LLC v. Stock Bldg Sup.*, 388 S.W.3d 391 (Tex. App. -- Amarillo 2012, no pet.).......................15

*Eckler v. Gen. Council of Assemblies of God*, 784 S.W. 2d 935 (Tex. App. – San Antonio 1990, writ denied) ....................................................................................................................................8

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990)............................................12,22,24

*Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56 (Tex. App. – Houston [14th Dist.] 2004, no pet.) ...........................................................................................................................................11

*Housing Auth. of the CCC v. Massey*, 878 S.W.2d 624 (Tex. App. – Corpus Christi 1994, no writ) ........20

*Jim Walter Homes, Inc. v. Reid*, 703 S.W.2d 701 (Tex. App. – Corpus Christi 1985, no writ..................21

*KCM Fin., LLC v. Bradshaw*, No. 13-0199, 2015 Tex. LEXIS 220 (Tex. Mar. 6, 2015)……………. 10

*McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337 (Tex. 1993) ................................................8

*Mission Park Funeral Chapel, Inc. v. Gallegos, No. 04-44-00459-CV*, 2001 Tex. App. LEXIS 2978 (Tex. App. -- San Antonio May 9, 2001, no pet.)…………………………………………………………23

*Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917 (Tex. 1998) ........................................................................22

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985) ........................................................6

*Noell v. City of Carrollton*, 431 S.W.3d 682 (Tex. App. -- Dallas 2014, pet. denied)……………………10

*Reagan Nat'l Adver of Austin, Inc. v. Lakeway 620 Partners LP*, No. 03-00-00719-CV, 2001 Tex. App. LEXIS 4375 (Tex. App. -- Austin June 29, 2001, pet. denied)…………………………………………… 15

*Trans. Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex. 1994) ............................................................................13

*Trencor, Inc. v. Cornech Mach. Co.*, 115 S.W.3d 145 (Tex. App. – Fort Worth 2003, pet. denied) .........16

## Rules

TEX. R. EVID. R. 803(6)…………………………………………………………………………………15

TEX. R. CIV. P. 166a(c)……………………………………………………………………………………

## STATEMENT OF THE CASE

***Trial:***    This case involves a subdivision's improperly-built retention pond. On September 8, 2011, plaintiff homeowners' association, Bridgestone Lakes Community Improvement Association filed suit for breach of fiduciary duty against the subdivision's developer and three individuals who sat simultaneously on the homeowners' first board and on the developer's board. (CR 5). They also brought claims for fraud and fraudulent concealment, (CR 7), negligence, gross negligence and willful misconduct. (CR 8). In addition, Plaintiffs brought a declaratory judgment action that they did not have to indemnify Defendants for attorneys' fees. (CR 8). The Board members brought a counterclaim for indemnity. (CR 13).

***Summary Judgment:***    On December 21, 2012, Judge Schaffer granted interlocutory summary judgment against the Plaintiffs on claims based on the failure to construct the pond according to plans approved by the Bridgestone MUD and its engineer. (CR SUPP3 3; CR Supp2 3). Plaintiffs brought multiple motions for rehearing/motions for new trial, and Plaintiffs filed a Fourth Amended Petition claiming the pond was not built according to the plans approved by the City and County. (CR SUPP 492). On April 3, 2013, Defendants filed a Motion for No-Evidence summary judgment (CR SUPP 164), and on March 21, 2013 Defendants filed a Motion for Summary Judgment seeking indemnity (CR SUPP 32) and a Supplemental Motion for Summary Judgment. (CR SUPP 39). On March 7, 2014, Judge Schaffer dismissed Plaintiffs' claims against the defendants based on the no evidence MSJ. (CR 97). The Judge filed Findings of Fact and Conclusions of Law on June 10, 2014. (CR 297). A bench trial was held on the award of indemnity (RR 1: 1-94; RR 2) and Final Judgment was signed on June 27, 2014. (CR 318).

***Post-Trial:*** Judgment was modified slightly as to the amount of the attorneys' fees.  (CR 325).  Notice of Appeal was filed on July 24, 2014.  (CR 336).

## STATEMENT ON ORAL ARGUMENT

These decisions rest purely on a matter of law and Appellant believes that oral argument is not needed. However, if it is granted to Appellees, Appellant requests oral argument.

## ISSUES PRESENTED FOR REVIEW

The trial court committed reversible error when it granted Summary Judgment on Appellant's claims concerning the variable slope of the pond's sides, as the claims concerning the variable slopes were not raised in the motion for summary judgment.

The trial court's denial of the Second Motion for Rehearing and New Trial was an abuse of discretion because the March 27, 2013 Request for Rehearing and Motion for New Trial showed that Plaintiff's claims were not patently unmeritorious and that, once allowed discovery, they were able to raise fact issues on the elements of duty and causation, and for the equitable reason that opponent interfered with the discovery process making the new evidence not available earlier.

The trial court's grant of the No Evidence Summary Judgment (CR 97) was harmful error because, at the time it was granted, the Fourth Amended Petition (CR SUPP 492) was the live pleading, and Plaintiffs had raised a fact issue of the elements of duty and causation (CR SUPP2 27) attacked by Defendants' Motion for No Evidence Summary Judgment. (CR SUPP 164).

The trial court's award of $94,990.73 in indemnity was excessive, and harmful error, because: (1) some of the fees were for labor that was purely unnecessary; (2) a multiplier of 0.5 times the total fees should have been applied rather than 0.75 because the three Board members who qualified for indemnity should have been counted as one party because the work that was done for one of them could have been used for the others without any more time being expended; and (3) in some matters the Board members were not the prevailing party so as to qualify for indemnity of the associated fees.

# No. 14-14-00604-CV

*On Appeal to the Fourteenth Court*
*Of Appeals*
*Houston, Texas*

---

Bridgestone Lakes Community Improvement
Association, Inc.
*Appellant*

v.

Bridgestone Lakes Development Company, Inc., et al
*Appellees*

---

ON APPEAL FROM CAUSE NO. 2011-53723-CV
IN THE 152nd DISTRICT COURT OF
HARRIS COUNTY. TEXAS

---

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, APPELLANT, (hereinafter "the homeowners' association"),

and presents this, its Appellant's Brief.

## STATEMENT OF FACTS

Bridgestone Lakes Community Improvement Association, Inc. ("the

homeowners") is a non-profit corporation composed of persons who reside and own

homes in the Bridgestone Lakes Subdivision, a small subdivision in the northern part

of Harris County, Texas. (CR SUPP2 4). Bridgestone Lakes Development Company, Inc. ('the developer") is the developer of the subdivision who built the homes around a retention pond in a manner that violated good practices for building such ponds. (CR SUPP2 4). The homeowners complaint was not just that such poor building caused added erosion of the sides of the pond. The homeowners' prime complaint was these bad practices caused astronomical repair costs, which the homeowners could not afford.[1] They also complained that the early Board Members, who also served on the Board of the Developer, fraudulently withheld information about the settlement between the Developer and the Homeowners' Association, requiring that the new (homeowner) Board Members ratify the Agreement which was unfair and very costly to the Homeowners' Association – not just committing fraud but also breaches of their fiduciary duty and willful acts. (CR SUPP 2 3-10; CR SUPP 492-515). The flaws in the pond include: (1) the failure to put in a maintenance berm, so that repairs could be done to the pond with heavy equipment, rather than by hand; (2) fencing off of the pond, again requiring hand rather than

---

[1] Excerpt from the deposition of Mr. Conner:
Q: "…now we're not saying that Mr. Hudson had anything to do with the nutria (a burrowing animal) but…did it cost more money to treat the nutria because there was a sidewalk there, fencing and a lack of a berm.
A: "Yes, I would say that it did. The means of treatment, rather than being more mechanical, in other words being able to go in with earth equipment…and excavate the caves and then recompact…the only thing that could go in in a cost effective manner was a urethane injection system which we could carry down the sidewalk." (CR Supp1 : 61)

machine repairs; (3) putting a sidewalk and fence immediately adjacent to the pond, thus increasing the slope angle on the pond; and (4) creating an inconsistent angle of the pond slope, from 2:1 to 3:1, resulting in inconsistent and increased erosion. (CR SUPP 2 3-10; CR SUPP 492-515).

Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath were individuals who were on the Homeowners' Association Board and were simultaneously on the board of the Developer. (CR SUPP2 3-10; CR SUPP 7). This Board of Directors of the homeowners signed a settlement agreement concerning the detention pond during the tenure of the Hudsons and Ms. Roath. (CR Supp 74; CR SUPP 513). The settlement agreement admitted that, "the Developer constructed the Section 1 Detention Facilities in a manner that varies from the Approved Plans, and, "Stormwater Solutions has advised the parties that the variations from the Approved Plans will result in increased cost of Maintenance Work and an increased likelihood of requiring Major Maintenance Work." (CR Supp1 : 74). In return for a $25,000 deposit by the Developer (which was a small amount of the actual costs)(CR SUPP 633-34), the homeowners, led by Mr. Hudson, agreed not to hold the developer responsible and agreed to have the Homeowners' Association take over the repair costs of the pond. (CR SUPP 506). The original Board kept quiet about their agreement with the Developer, and had the oncoming Board (i.e. Plaintiffs) accept all of their decisions, without knowing the existence of and ramifications of this

3

Agreement. (CR SUPP2 19). The new board was asked to, and did, sign an agreement that made all of the old board's actions final – without knowing what these actions were. (CR SUPP2 6). When the new board found that the old board *knew* that the pond was built incorrectly and that the old board had agreed to accept sky-high maintenance costs, this lawsuit came about. (CR SUPP 526).

The Court awarded summary judgment to defendants on all of the homeowners' claims on December 21, 2012. (CR SUPP 3 3). Then, the Court awarded summary judgment on the No Evidence Motion for Summary Judgment (Fourth Amendment Petition) on March 7, 2014. (CR 97). A bench trial was had on the old board members' counterclaim for indemnity. (RR1; RR2). The Articles of Incorporation for Bridgestone Lakes Community Improvement Association, Inc. provide for indemnification of board members "except in relation to matters as to which he shall be judged in such action, suit, or proceedings to be liable for gross negligence or willful misconduct in the performance of duty. BYLAWS OF BRIDGESTONE LAKES COMMUNITY IMPROVEMENT ASS'N, INC., art. XI, § 5. (RR2, Ex. 1). Segregation of fees was the major issue of the bench trial. Because the interest of the old board members were identical, the homeowners' argued that the actual fees should be split 50:50, with indemnity for only 50% of the total fees generated. (The developer was not eligible for indemnity.) The defendants argued that 75% of

the total fees should be indemnified. (RR 1). The Court awarded 75% of the total fees as indemnification. (CR 325).

## SUMMARY OF ARGUMENT

Summary judgment is not proper on any claim not explicitly raised in the Motion for Summary Judgment. Defendants' First Motion for Summary Judgment only addressed the absence of duty and causation in regard to the homeowners' claims that the absence of a berm caused damages and the sidewalk in the slope area caused damages. It did not address, *at all*, the homeowners' claims that the varying slopes of the pond caused damages. The homeowners were not required to raise a fact issue on causation or duty on this claim until it was raised in the motion for summary judgment. This affects summary judgment on all causes of action. Granting a summary judgment on causes of action not addressed in the motion is reversible error.

It should be reversible error not to grant a new trial where new evidence shows that there were fact issues on all contested elements and the opponent's interference with the discovery process is the reason the new evidence was not formerly available. The Second Motion for New Trial/ Motion for Rehearing established that there was evidence of duty and causation on all causes of action and only because the attorney for BMUD had "silenced" a material witness had the Plaintiffs not been able to bring this evidence forward in a timely manner.

Collateral estoppel did not apply to the Motion for No Evidence Summary Judgment and Supplemental Motion for Summary Judgment. A different allegation was at issue: that the Developer did not build the Detention Pond according to the Plans submitted to the City and County. Additionally, this had not been fully and fairly litigated earlier in the litigation. Evidence presented by Plaintiff raised a fact issue on duty and causation for each cause of action so summary judgment on the Fourth Amended Original Petition was reversible error.

Finally, the attorneys' fees awarded for indemnity were excessive. Only the individual Defendants were entitled to indemnity under the Bylaws, and Plaintiffs argued that the legal fees incurred should have been multiplied by a multiplier of 0.5 rather than 0.75 because the work done for the individuals was identical, making it half of total work done. Additionally, some of the work done, like preparation of a jury charge when Defendants knew this was not a jury trial, was not reasonable and necessary, and some amounts of time spent were excessive.

## APPELLANT'S ARGUMENTS

### FIRST ISSUE

The trial court committed reversible error when it granted summary Judgment on Appellant's claims concerning the variable slope of the pond's sides, as the claims concerning the variable slopes were not raised in the motion for summary judgment.

## STANDARD OF REVIEW

The Supreme Court has mandated the following standards for reviewing a motion for summary judgment:

1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and
3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *see also, Clark v. Pruitt*, 820 S.W.2d 903, 905-06 (Tex. App. – Houston [1st Dist.] 1991, no writ).

## ARGUMENT & AUTHORITIES ON FIRST ISSUE

Appellees' first motion for summary judgment attacked Appellant's claims that it was wrongful to fail to put in a thirty-foot maintenance berm and a sidewalk that increased erosion in the pond. (CR SUPP1 8). In relation to the breach of fiduciary duty cause of action, Appellees attacked Appellant's claims that "…the Defendants failed to build a thirty (30) foot maintenance berm, then they put in a sidewalk, which created more of a slope angle on the pond, which in turn increased the rate of erosion." (CR SUPP1 9). No mention of Appellant's claim that anything to do with the variable slopes of the pond sides could be a breach of fiduciary duty-

or not a breach of fiduciary duty. With respect to the fraud action, Appellees attacked Appellant's claims that the old board did not reveal "the fact that they failed to put in a thirty (30) foot maintenance berm and they put in a sidewalk that increased erosion in the pond." (CRSUPP1 10). No mention that failure to tell the new board about the variable slopes did – or *did not* – make a tenable fraud claim. With respect to Appellant's negligence, gross negligence and willful misconduct claims, again, Appellees attack only "Plaintiff[']s] claims 'that the Defendants' failure to build a thirty (30) foot maintenance berm and their decision to build a sidewalk that increased erosion…[was wrongful]" (CR SUPP 10). They make no mention of the variable slopes of the pond. On the next page of the motion, Appellees continue, "As this Court knows, the existence of duty and causation of damages (due to the breach of such duty) are questions of law for a trial court to determine from facts surrounding the occurrence in question, ***which in this case is the purported duty to construct a thirty (30) foot maintenance berm and the presence of a sidewalk on side slope causing erosion***. (CR SUPP 11, #12). On page CR SUPP 12, again they mention only the thirty (30) foot berm. (CR SUPP1 12, #13). On page CR SUPP1 15, again the Appellees mention that "the presence of a sidewalk on the side slope did not cause any damages repaired by Storm Water Solutions." (CR SUPP1 15, #15). No mention of the variable slopes claimed by Appellant is made.

A summary judgment motion must define the issues and put the non-moving party on notice with adequate information to oppose the motion. *Eckler v. Gen. Council of Assemblies of God*, 784 S.W. 2d 935, 937 (Tex. App. – San Antonio 1990, writ denied). How is a non-movant going to have adequate information to oppose an effort to eliminate their claims concerning the variable slopes, if all the movant talks about is a thirty-foot berm and a sidewalk? The movant cannot hide the grounds of attack under a bushel barrel of totally different attacks. The duty and causation related to the uneven slopes would have been proven to exist by the Detention Pond Maintenance Agreement executed while Defendants were still on the Board, (this was done so that BMUD would "approve" the pond and accept ownership of the pond, CR SUPP 2 7). But there was no reason to raise it because Defendants had not attacked the duty and causation of the 2:1 to 3:1 slopes. An appellate court cannot read between the lines, infer or glean from the pleadings or the proof any grounds for granting summary judgment other than those grounds expressly set forth before the trial court. *McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337, 343 (Tex. 1993). Summary judgment cannot be granted on the claims about differing slopes.

An example where a movant failed to address all claims and was denied total summary judgment occurred in *Clark v. Pruitt*, 820 S.W.2d 903 (Tex. App. – Houston [1st Dist.] 1991, no writ). Clark's pleadings had raised estoppel as a

9

counter-affirmative defense to a limitations defense, and Pruitt did not address estoppel in his affidavit or his brief. *Id.* The appellate court reversed the summary judgment. Granting a summary judgment on causes of action not addressed in the motion is reversible error. *Desert Palm Properties, N.V. v. McFarlane*, No. 01-92-00967-CV, 1994 Tex. App. LEXIS 2951 (Tex. App. – Houston [1ˢᵗ Dist.] Dec. 8, 1994, writ denied). The first summary judgment should be reversed.

## SECOND ISSUE

> The trial court's denial of the Second Motion for Rehearing and New Trial was an abuse of discretion because the March 27, 2013 Request for Rehearing and Motion for New Trial showed that Plaintiff's claims were not patently unmeritorious and that, once allowed discovery, they were able to raise fact issues on the elements of duty and causation.

## STANDARD OF REVIEW

The summary judgment standard would apply to a Motion for Rehearing. Abuse of discretion is the correct standard to apply to a motion for new trial. A trial court has wide discretion in granting a new trial, and the trial court's discretion will not be disturbed on appeal absent a showing of manifest abuse of discretion. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988).

## ARGUMENT & AUTHORITIES ON SECOND ISSUE

Regarding the Motion for Summary Judgment entered December 21, 2012, (CR SUPP 3 3), Plaintiff filed two Motions for Rehearing and Motions for New Trial. This appellate issue pertains to the Second Motion for Rehearing and Motion for New Trial, filed on March 27, 2013, (CR SUPP 41) and the Supplement filed the next day. (CR SUPP 97).

The first cause of action in which duty has been brought into question by the Motion for Summary Judgment was breach of fiduciary duty. Summary judgment was granted based on the Defendants having negated the existence of a fiduciary duty that could be breached. The Third Amended Original Petition alleged that all three defendants were members of the Homeowners' Association Board and the Detention Pond Maintenance Agreement (CR SUPP 74) showed Robert Hudson to have been president of this Board. (CR SUPP 85-86). A fiduciary relationship is not limited to cases where legal relations create a fiduciary duty as a matter of law, although Plaintiff would argue that this is such a case. A fiduciary relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed and the origin of the confidence is immaterial. *Noell v. City of Carrollton*, 431 S.W. 3d 682 (Tex. App. – Dallas 2014, pet. denied). Here, the homeowners trusted the Board to look out for their interests vis-à-vis the

Developer and the "outside world". This was sufficient to bring about a fiduciary duty or duty of utmost good faith and fair dealing. *KCM Fin. LLC v. Bradshaw*, No. 13-0199, 2015 Tex. LEXIS 220 (Tex. Mar. 6, 2015). Moreover, self-dealing would be a breach. All individuals were also employed by the Developer. Had they decided to fix the pond according to Storm Water Solutions recommendations, the cost - $126,716 (CR SUPP 96) – would have been born mostly by the developer. By waiting and not fixing the pond, the cost would be born by the homeowners. (CR SUPP 54, 57). This is at least some evidence of causation of damages. This shows the breach of fiduciary duty claim *not* to have been a patently unmeritorious claim – the only kind summary judgment is supposed to eliminate.

The next claim brought by the Plaintiff is fraud. Fraud is not only committed by a knowing misrepresentation; it is also committed by failure to make a representation when one has a duty to do so. *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56 (Tex. App. – Houston [14th Dist.] 2004, no pet.). One has a duty to disclose a material fact when there is a confidential (i.e. fiduciary) relationship. *Id.* The signature on the Detention Pond Maintenance Agreement shows Robert Hudson to be the president of the Homeowners' Board. (CR SUPP 85-86). The summary judgment did *not* show Roath and Claudia Hudson not to be as the Plaintiff alleged, i.e. they were members of the Homeowners' Association Board, too. (CR SUPP2 6). The Maintenance Agreement showed that there was a

material fact to be told:  the pond was not constructed as per plans (CR SUPP 52, 74) and it would cost more to maintain or fix. (CR SUPP 74).  The affidavit of Ms. Wilkinson testified that they were not told, despite the fact that they had a responsibility, as discussed above, for utmost goof faith and fair dealing.  (CR SUPP 57, 90, 96).  Therefore they had a duty to tell the oncoming board this material fact, so they could either take care of it or sue the developer – theirs was a fiduciary relationship which gave rise to a duty to "tell" and they didn't.  The summary judgment *did not* show that there was no duty to tell which was breached.  Likewise, for the same reasons, the summary judgment *did not* discount the causation of the damages.  (CR SUPP 54, 58, 61, 63, 77).

The next cause of action which the summary judgment had attacked was negligence/gross negligence/willful conduct.  In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, the foreseeability and the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant…of all these factors, foreseeability of the risk is "the foremost and dominant consideration.  *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).  Even a volunteer owes a duty to act non-negligently. *Bodin v. Tenneco Oil Co.,* 373 S.W.2d 350 (Tex. App – Corpus Christi 1963, writ ref'd n.r.e.).  When the cost to fix the pond became

known, (CR SUPP 96), and the cause of the problem became known, (CR SUPP 54), and the fact that repairs would cost more if the pond were left as it was, (CR SUPP 54, 57, 61), it was foreseeable that the costs of leaving it as it was would bury a small homeowners' association in costs and the ordinary prudent person would pay the costs to completely fix the pond at a time when the Developer was still on the Board and the Developer would have to pay most of the costs. Given the foreseeability, particularly, there was a duty to act non-negligently. The evidence of causation is as listed for the other causes of action. Summary judgment should *not* have been granted on the negligence cause of action.

Gross negligence, to be the ground for exemplary damages, should be the entire want to care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the persons affected by it. *Trans. Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex. 1994). Given the actual knowledge that Defendants had, (CR SUPP 54, 58), and the large risk ($126,716 for a small homeowners' association – or any homeowners' association (CR SUPP 96), and the lack of positive social utility of leaving it unfixed, and the minor imposition on a developer who has been a developer for many years – indicating substantial wealth – Defendants had a duty to not be grossly negligent. Factors that showed causation are the same as for the other torts. Summary judgment should *not* have been entered on gross negligence.

Lastly, Jones and Carter and Storm Water Solutions confirmed that the pond wasn't "right" and Defendant was made aware of the problem of huge costs. (CR SUPP 53-54, 58, 77, 90 and told how to fix it. (CR SUPP 96). Defendants failure to fix the pond was nothing short of willful misconduct. The same factors that generate a duty for gross negligence do so also for willful conduct. The same factors that show causation for the other torts do so for willful conduct. Summary judgment should *not* have been granted on willful conduct.

Defendants point to various pieces of evidence counter to Plaintiff's evidence. However, all this establishes is that there are ***fact issues*** on some points. Conner testified that the developer constructed the pond in a manner not according to his own plans. (CR SUPP 52). Then he testified that he couldn't know if the Bridgestone MUD engineers would have looked at the plans. (CR SUPP 103). Conner currently does water utility operations, (CR SUPP 51) and Defendant developer could be a possible client in the future. A summary judgment may be based on the testimonial evidence of an interested witness is it is uncontroverted, or on the expert testimony of an interested witness if the evidence is clear, positive, direct, otherwise credible and free from contradictions and inconsistencies and could be readily controverted. TEX. R. CIV. P. 166a(c). The testimony about whether BMUD ever approved the plans is testimonial evidence. It is not uncontroverted, however: first Conner says he knows, then he says he doesn't know. (CR SUPP

15

103).  This does not undermine Plaintiff's causes of action.  If evidence requires the Court to assess credibility or resolve which time the witness was telling the truth, it is not proper for summary judgment.  *Reagan Nat'l Adver. of Austin, Inc. v. Lakeway 620 Partners LP*, No. 03-00-00719-CV, 2001 Texas App. LEXIS 4375 (Tex. App. – Austin June 29, 2001, pet. denied).  Additionally, the Detention Pond Maintenance Agreement said the developers varied from the approved plans and say that these plans were approved by the District, BMUD.  (CR SUPP 74, 76).  This does not negate any causes of action.

Defendant complains that evidence is heresay, but they did not get a ruling on their hearsay objection.  A party seeking to exclude evidence must obtain a written ruling on the objection.  *Stovall & Assoc. v. Hibbs Fin Ctr., Ltd.,* 409 S.W.3d 790, 797 (Tex. App. – Dallas 2013, no pet.).  Defendants did not do so for any of the alleged "hearsay." (CR SUPP 50, et seq.)  Moreover, business records that have become another entity's primary record of the underlying transaction may be admissible pursuant to TEX. R. EVID. R. 803 (6).  Therefore, the estimate of costs to do remedial work on the pond, done by Storm Water Solutions, an engineering and water utility company, (CR. SUPP. 69), became the admissible business records to show causation of the inaccuracies in making the pond.  (CR. SUPP. 96).  Likewise, an email and its attachments are admissible as admissions of a party opponent.  *Direct Value, L.L.C. v. Stock Bldg. Sup.*, 388 S.W.3d, 391 n.5 (Tex. App.

– Amarillo 2012, no pet.). A statement by a party's agent or servant concerning the matter within the scope of his agency or employment may be offered as an admission of the party itself. *Trencor, Inc. v. Cornech Mach. Co.*, 115 S.W.3d 145, 151 (Tex. App. – Fort Worth 2003, pet. denied). Therefore, the email from an engineer (Glessinger) at Storm Water Solutions while in the Defendants employ, that said repairs would be more expensive because of the design, provides some evidence of causation. (CR SUPP 90, 63). Exact cost estimates (CR SUPP 54, 57, 61, 77, 95-96) raise a fact issue against settlement boilerplate that says," The cost of maintenance work is uncertain and difficult to ascertain." Causation and damages are for the trier of fact to determine.

Finally, Defendants claimed that Conner was not an engineer and was unfit to give expert testimony. While Conner did testify that he did not know as much as an engineer, he was manager for Bridgestone MUD and currently does water utility operations. (CR SUPP 50-51). One would expect him to be familiar with costs, pond maintenance, and proper construction of ponds. So he is qualified as an expert in those areas. However, this is not an area of expertise for expert testimony. The logic is simple: Draw a one inch horizontal line. Draw a second one about an inch away. Draw two lines, at right angles, each starting at the right end of the one inch line. Make the first one two inches and the second one three inches. Now connect the open sides to form a hypotenuse for each triangle. The hypotenuse is the slope

17

of the pond wall. Any person of average eyesight can tell that the "three inch" triangle is steeper than the "two inch triangle" (slopes vary around the pond) and can tell whether the slope is nearer to a 3:1 slope or a 2:1 slope. Conner's testimony did not need to be expert testimony. Simply by watching the areas with different slopes, he couldn't give a mathematical rate of ccx3/per hour but – he visited the pond at least once a week (CR SUPP 50) – he could see which one was eroding faster.

Finally, testimony that Hudson was made aware of the problem with the side slopes and the increased costs is not hearsay, because it would have been Conner telling him. At deposition, he was available for questioning.

Even this prime witness had not been deposed at the time summary judgment was filed. Rarely is summary judgment allowed when most of the discovery has not commenced. Ms. Rice's Affidavit explained the need for Mr. Conner's testimony, *Tenneco Inc. v. Enterprise Prods.*, 925 S.W.2d 640, 647 (Tex. 1996)(a party who contends that it has not had time for discovery must file either an affidavit explaining the need for further discovery…). She explained that the attorney for BMUD actively interfered with her getting any testimony from Mr. Conner, the prime witness in the case. (CR SUPP 23-24). Interference with the discovery process is a serious matter. Judges have broad discretion whether to grant a new trial but they do not have the discretion to allow discovery interference to change the result of a case that, when the evidence comes in (as soon as possible after decision) makes it

painfully obvious that there are multiple fact issues that would preclude summary judgment. A motion for New Trial is an equitable proceeding. Such a result is inequitable and raises issues of judicial inefficiency for results that are likely to be overturned on appeal. Counsel did not find case authority saying that it is an abuse of discretion to deny a Motion for New Trial where: (1) discovery was interfered with by the other side and (2) once discovery was obtained, it showed there were fact issues on all the elements in contention in the motion for summary judgment. However, this would be a narrow ruling, applicable only where there has been discovery interference, and it would follow guiding rules and principles to do equity and conserve judicial economy. For these reasons, the second denial of a Motion for New Trial and Rehearing should be reversed, as should the First Motion for Summary Judgment.

## THIRD ISSUE

> The trial court's grant of the No Evidence Summary Judgment (CR 97) was harmful error because, at the time it was granted, the Fourth Amended Petition (CR SUPP 492) was the live pleading, and Plaintiffs had raised a fact issue of the elements of duty and causation (CR SUPP2 27) attacked by Defendants' Motion for No Evidence Summary Judgment. (CR SUPP 164).

## STANDARD OF REVIEW

Once a no-evidence motion for summary judgment is filed, the burden shifts to the non-moving party to present evidence raising an issue of material fact as to

19

the elements (duty and causation) specified in the motion. The evidence presented by the motion and response is reviewed in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581-82 (Tex. 2006).

## ARGUMENT & AUTHORITIES ON THIRD ISSUE

1. Collateral Estoppel

The Fourth Amended Original Petition changed the previous pleadings by claiming that the Defendants erred by building the pond counter to the plans approved by the City of Houston and Harris County.

Defendants in their No Evidence Motion for Summary Judgment claimed that collateral estoppel applied to bar Plaintiff's claims. The essential elements of collateral estoppel are: the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; those facts were essential to the judgment in the first action, and the parties were cast as adversaries in the first action. *Cole v. G.O. Assoc., Ltd*, 847 S.W.2d 429 (Tex. App. – Fort Worth 1993, writ denied). To make a determination whether the facts in a case were litigated, the court considers the following facts: whether the parties were fully heard, whether the court supported its decision with reasoned opinion, and whether the decision was subject to appeal

or was in fact reviewed on appeal. *Id.* An ultimate issue essential to the judgment does not refer to a claim or cause of action, but to factual determinations submitted to the jury that are necessary to form a basis of judgment. *Housing Auth. of the CCC v. Massey*, 878 S.W.2d 624, 627 (Tex. App. – Corpus Christi 1994, no writ).

The ultimate issue in the Fourth Amended Petition is that "Developer failed to build the Section 1 Detention Pond as per the plans that the Developer submitted to the City and County in 2001 and resubmitted in 2008 and the Defendants failed to reveal this to the new board members. (CR SUPP 497). This is a different fact than having failed to build the pond to the plans submitted to BMUD. Therefore collateral estoppel doesn't apply.

Also, the facts in a case were not fully and fairly litigated. Mr. Conner testified that he didn't know if the plans were submitted to BMUD, but they were to the City. (CR SUPP 52). Other than that, there was no mention of plans submitted to the City and there has been no appeal until now. Collateral estoppel does not apply.

Comparison with the plans possibly approved by BMUD, (CR SUPP 74), the plans approved by the City did require a 3:1 slope, no sidewalk or fences. "The 2001 and 2008 Plans that the Developer submitted to the City and County indicate that there is a 3 to 1 slope around the pond…and the sidewalk and fence were not in the plans that the Developer submitted to the City and County in 2001 and 2008…before the Section 1 Pond was completed the Defendant, Robert Hudson was made aware

21

of the problem with the side slopes, fences and sidewalks, but he failed to correct the problems. All of the Defendants failed to insure that the pond was built properly and their decisions regarded the pond protected the interests of the Developer and benefitted the Developer financially." (CR SUPP 498).

2. Duty & Causation Evidence

Because the discrepancy between the BMUD Plans and reality, and the discrepancy between the Houston/Harris County Plans and reality were the same, the Court is directed to take judicial notice of the exhibits against summary judgment that were presented with the Second Motion for Rehearing. (CR SUPP 50, et seq.) These also function as exhibits against summary judgment on the Fourth Amended Petition. A builder owes a duty of ordinary care in the building of its product in a good and workmanlike manner. *Jim Walter Homes, Inc. v. Reid*, 703 S.W.2d 701 (Tex. App. – Corpus Christi 1985, no writ). To determine whether one has a duty not to be grossly negligent, one looks at several interrelated factors, including the risk, the foreseeability and the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant…of all these factors, foreseeability of the risk is "the foremost and dominant consideration. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. Gross negligence includes two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve

22

an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety or welfare of others. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917 (Tex. 1998). There is no question that the Defendants, as Board Members knew that the Homeowners' Association faced an extreme degree of risk - $126,716 (CR SUPP 96) if the Board did not fix the pond. It was foreseeable that they would actually have to pay extra money. (CR SUPP 54). Likewise, the Board proceeded with conscious indifference not to make the repairs but to enter into an agreement where the homeowners would be required to make the repairs. (CR SUPP 60). The Plaintiff has raised more than a scintilla of evidence on the existence of duty and causation for gross negligence.

Likewise, the Board had a duty not to commit willful misconduct. The just-discussed factors argue for a duty. Also, the utility of failing to correct the pond was negative. (See, e.g. CR SUPP 61). And the burden on a developer could not possibly be as great as it would be on sixty-some-odd homeowners. The Plaintiff has raised more than a scintilla of evidence of duty and causation on willful conduct.

Adopted herein by reference are the references to evidence by which Plaintiff raised more than a scintilla of an existence of duty and causation on the other causes of action. (*See, infra*, pp. 10-12).

## FOURTH ISSUE

The trial court's award of $94,990.73 in indemnity was excessive, and harmful error.

## STANDARD OF REVIEW

The Fourth Issue argues that fees are excessive for several reasons: (1) First off, no indemnity is owed at this time because Plaintiff has raised a fact issue on duty and causation in the Third Issue and less indemnity is owed because the First Issue eliminated one of the claims on which summary judgment was attempted. Issues Three and Four should be sent back to the finder of fact in the trial court and, because the indemnity agreement makes indemnity due only when it cannot be proven that Defendants did not commit gross negligence or willful acts, indemnity is premature. Thus, the standard of review is *de novo*, and award of indemnity is premature.

Second, some of the fees were for work that was purely unnecessary. The standard of review in remittitur cases is sufficiency of the evidence. *Mission Park Funeral Chapel, Inc. v. Gallegos*, No. 04-00-00459-CV, 2001 Tex. App. LEXIS 2978 (Tex. App. – San Antonio May 9, 2001, no pet.).

Third, a multiplier of 0.5 should have been applied to the total bill because all the Board member's interests were identical and you should only have to do the same thing once for all three. The Developer was not entitled to indemnity. Again, the standard of review in remittitur cases is sufficiency of the evidence. *Id.*

24

Finally, in some matters the Board members were not the prevailing party. I could find no authority on this, but believe it to be a *de novo* review.

## ARGUMENT & AUTHORITIES ON FOURTH ISSUE

A trial to the bench was had on indemnity. (RR1, RR2).

Section 5 of the Bylaws provides for indemnification as follows:

"The Association shall indemnify any Director, officer, or employee of the Association against expenses actually and necessarily incurred by him and any amount paid in satisfaction of judgments in connection with any action, suit or proceedings, whether civil or criminal in nature, in which he is made a party by reason of being or having been a Director, officer or employee…except in relation to matters as to which he shall be judged in such action, suit or proceeding to be **liable for gross negligence or willful misconduct** in the performance of duty." (CR 27).

Because Plaintiff has taken steps in this appeal to overturn the No Evidence Summary Judgment on the issues of duty and causation for the causes of action of gross negligence and willful misconduct, it would be premature to indemnify any of the Defendants. (Of course, by the terms of the Bylaws, the Developer is not eligible for this indemnity.)

If such time comes as indemnity is an issue, there are other arguments against full indemnity. Firstly, the interests for Robert Hudson, Claudia Hudson and Tiffany Roath were identical in this case. Plaintiff would argue that, like with jury charges and "strikes", identical interests should be grouped together. Therefore, half of the total bill is reimburseable as indemnity and half is not because it is attributable to

work on the Developer's behalf, an interest somewhat different from that of the Board Members in that he may have done different acts and he is not eligible for indemnity.

Counsel for Defendant brought up the point that the judgment will be awarded "jointly and severally." This is a red herring. What we are indemnifying is attorney labor, quantified in hours, not payment of damages, as there presently are none. If Plaintiff is successful in its challenges and goes on to full trial, indemnification of a judgment may be an issue. But it is premature at this juncture. Therefore the possibility of joint and several damages has nothing to do with quantifying how much attorney labor was needed for what party.

Some of the labor expended simply wasn't reasonable and necessary. Counsel for Plaintiff testified to this at trial. (RR1). A total of $50,643.77 was not reasonable and necessary. Among items that were not reasonable and necessary are everything to do with a jury. A jury demand was made, (RR1 19-20), but no jury fee was ever paid. Defendants knew they weren't having a jury, but counsel went on to do 22.35 hrs (invoice 43332) on a jury charge and motion in limine. The Depositions on Written Questions were for the benefit of the Developer (invoices 42975, 43067)(RR1 23-32), so should not be paid to the Board Members. The amount of time on invoice 43171 for a Motion for Summary Judgment was not reasonable because it was a simple motion with little research. (RR1 33). The Motion to Quash

the Conner Deposition was not necessary as Plaintiff still needed it for its rehearing and Defendants' Counterclaim was on file. (RR1 37)(Invoice 43348). The Motion to Dismiss and Motion for Sanctions were not necessary. (RR1 40)(Invoice 43469, 43559, 43676). Invoice 43412 only benefitted the developer. Rule 91a attorney's fees are only awarded if you are successful, so they should not be awarded. (RR1 41). The total amount of fees is $120,645.69. (RR1 55). Deducting those fees that were not reasonable and necessary is: $120,645.69 - $ 50,643.77= $70,001.92. Then, by the apportionment formula discussed above, this should be $35.000.96 or half of the $70K to go toward indemnification. This Court should order a remittitur, if it orders any fees at all.

## CONCLUSION & PRAYER

This was a case where the Developer and the Developer's hand-picked board members knew they had built a Detention Pond wrong and knew that they were sticking the homeowners for substantial extra costs. Through summary judgments long before discovery had gotten off the ground they: (1) wrongfully got a first summary judgment on grounds not addressed in the Motion; (2) defeated a motion for new trial where the evidence showed that the first summary judgment shouldn't have been granted at all; (3) wrongfully got a no evidence summary judgment when there was evidence of duty and causation; and (4) obtained an indemnity award for far more than they deserved.

27

Plaintiff asks that the first summary judgment be reversed, the motion for new trial be granted, the no evidence summary judgment be reversed, this case be returned to the trial court for trial, and, if indemnity is still awarded, that it be for a much lower sum in keeping with reasonable and necessary fees. Plaintiff asks for such other and further relief as may be just.

Respectfully submitted,

_____/s/ MB CHIMENE_____
THE CHIMENE LAW FIRM
Michele Barber Chimene
TBN 04207500
2827 Linkwood Dr.
Houston, TX. 77025
PH: 832 940-1471; no fax
michelec@airmail.net


LAW OFFICES OF M. SUSAN RICE
M. Susan Rice
TBN 10393380
39340 IH-10 West, Suite D
Boerne, TX. 78006
PH: 888 840-1593
srice@msricelaw.com

CERTIFICATE OF COMPLIANCE

This brief was typed in proportional 14 pt. Times Roman font and is 8209 words per the Rules of Appellate Procedure.

_____/s/ MB CHIMENE_____

## CERTIFICATE OF SERVICE

A true and correct copy of this Brief and Appendix has been served via ECF and email on Mr. Joseph Callier, counsel for Defendants, at 4900 Woodway, Ste. 700, Houston, TX. 77056 on April 28, 2015.

_____/s/ MB CHIMENE_____

# No. 14-14-00604-CV

*On Appeal to the Fourteenth Court*
*Of Appeals*
*Houston, Texas*

---

Bridgestone Lakes Community Improvement
Association, Inc.
*Appellant*

v.

Bridgestone Lakes Development Company, Inc., et al
*Appellees*

---

ON APPEAL FROM CAUSE NO. 2011-53723-CV
IN THE 152nd DISTRICT COURT OF
HARRIS COUNTY. TEXAS

---

## APPENDIX

1. Order (Motion for Summary Judgment)
2. Order (Motion for Rehearing & Motion for New Trial)
3. Order (Motion for No Evidence Summary Judgment)
4. Findings of Fact
5. Final Judgment
6. Modified Final Judgment
7. Detention Pond Agreement

**TAB 1**



CAUSE NO. 2011-53723

| | | |
|---|---|---|
| BRIDGESTONE LAKES COMMUNITY IMPROVEMENT ASSOCIAITON, INC. | § § § | IN THE DISTRICT COURT |
| v. | § § | HARRIS COUNTY, TEXAS |
| BRIDGESTONE LAKES DEVELOPMENT COMPANY, INC., ET AL | § § § | 152ND JUDICIAL DISTRICT |

**ORDER**

On _____, 2012, this court considered Defendants Bridgestone Lakes Development Company, Inc., Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath's Motion for Summary Judgment. After considering the Motion, any response, arguments of counsel, and applicable law, the Court **GRANTS** the Motion. It is therefore

**ORDERED** that Plaintiff's claims against Defendants Bridgestone Lakes Development Company, Inc., Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath's are hereby dismissed.

SIGNED on this _____ day of ___DEC 2 1 2012___, 2012.

12-21-12

_____
JUDGE PRESIDING

APPROVED:

_____
Joseph Alan Callier
State Bar No. 03663500
4900 Woodway, Suite 700
Houston, Texas 77056
Telephone: (713) 439-0248
Facsimile: (713) 439-1908
Attorney for Defendants,
**BRIDGESTONE LAKES DEVELOPMENT COMPANY, INC. AND ROBERT A. HUDSON, CLAUDIA J. HUDSON AND TIFFANY A. ROATH, INDIVIDUALLY**

Certified Document Number: 54277908 - Page 1 of 1

H:\DOCS\BRIDGESTONE\PLEADINGS\ORDER GRANTING MOTION FOR SUMMARY JUDGMENT.DOCX



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   April 28, 2015

Certified Document Number:        54277908 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



**TAB 2**

*P-2*

*RERHY*

Filed 13 April 18 P12:37
Chris Daniel - District Clerk
Harris County
FAX15455923

## CAUSE NO. 2011-53723

| | | |
|---|---|---|
| BRIDGESTONE LAKES COMMUNITY IMPROVEMENT ASSOCIAITON, INC. | § § § | IN   THE   DISTRICT   COURT |
| v. | § § | HARRIS   COUNTY,   TEXAS |
| BRIDGESTONE LAKES DEVELOPMENT COMPANY, INC., ET AL | § § § | 152ND   JUDICIAL   DISTRICT |

## ORDER

On _____, 2013, this court considered Plaintiff/Counter Defendant Bridgestone Lakes Community Improvement Association, Inc.'s Amended Request for Rehearing and Motion for New Trial and Defendants/Counterclaimants Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath's Motion for Sanctions. After considering Bridgestone Lakes Community Improvement Association, Inc.'s Motion, arguments of counsel, and applicable law, Plaintiff's Amended Request for Rehearing and Motion for New Trial is **DENIED**.

After considering Defendants/Counterclaimants Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath's Motion for Sanctions, arguments of counsel, and applicable law, the Motion for Sanctions is **GRANTED**. Bridgestone Lakes Community Improvement Association, Inc. is

**ORDERED** to pay $_____ to Defendants/Counterclaimants Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath, consistent with CPRC §10.002, as a sanction for filing an Amended Rehearing Request and Motion for New Trial which, based on the Court's review of the pleadings of Plaintiff/Counter Defendant Bridgestone Lakes Community Improvement Association, Inc. and deposition of Eugene "Gene "Conner, shows that the amended rehearing request to be without evidentiary support in violation of CPRC §10.001; additionally, the assertion (that Bridgestone Municipal Utility District acted to prevent Eugene "Gene "Conner from providing summary judgment proof) made in Plaintiff/Counter Defendant Bridgestone Lakes Community

10

Certified Document Number: 55409825 - Page 1 of 2

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Improvement Association, Inc.'s initial Rehearing Request and Motion for New Trial was without evidentiary support in violation of CPRC §10.001 and groundless and brought for a purpose of harassment and/or to cause Defendants/Counterclaimants Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath to incur unnecessary expense. This payment is to be made on or before _____ by cashier's check or other certified funds.

SIGNED on this _____ day of _____ APR 2 3 2013 4-23-13, 2013.

_____
JUDGE PRESIDING

**APPROVED:**

_____
Joseph Alan Callier
State Bar No. 03663500
4900 Woodway, Suite 700
Houston, Texas 77056
Telephone: (713) 439-0248
Facsimile: (713) 439-1908
Attorney for Defendants/Counterclaimants,
**ROBERT A. HUDSON, CLAUDIA J. HUDSON AND TIFFANY A. ROATH**

Certified Document Number: 55409825 - Page 2 of 2

11

H:\DOCS\BRIDGESTONE\PLEADINGS\4-18-13DEFENDANTS REPLYPLAINTIFF AMENDED MOTION FOR REHEARING AND NEW TRIAL.DOC



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 28, 2015

Certified Document Number:        55409825 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**TAB 3**

P-2

(7A)

Filed 13 November 20 P12:30
Chris Daniel - District Clerk
Harris County
FAX15632218

## CAUSE NO. 2011-53723

| | | |
|---|---|---|
| BRIDGESTONE LAKES COMMUNITY IMPROVEMENT ASSOCIAITON, INC. | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§<br>§ | HARRIS COUNTY, TEXAS |
| BRIDGESTONE LAKES DEVELOPMENT COMPANY, INC., ET AL | §<br>§ | 152ND JUDICIAL DISTRICT |

### ORDER

On _____, 2013, this court considered Defendants Bridgestone Lakes Development Company, Inc., Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath's No Evidence Motion for Summary Judgment filed on November 20, 2013. After considering the Motion, any response, arguments of counsel, and applicable law, the Court **GRANTS** the Motion. It is therefore

**ORDERED** that Plaintiff's claims against Defendants Bridgestone Lakes Development Company, Inc., Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath's are hereby dismissed.

SIGNED on this _____ day of ____**MAR 0 7 2014**, 20 __.

JUDGE PRESIDING

Certified Document Number: 59945464 - Page 1 of 2

8



**APPROVED:**

Joseph Alan Callier
State Bar No. 03663500
4900 Woodway, Suite 700
Houston, Texas 77056
Telephone: (713) 439-0248
Facsimile: (713) 439-1908
Attorney for Defendants,
**BRIDGESTONE LAKES DEVELOPMENT COMPANY, INC.**
**ROBERT A. HUDSON, CLAUDIA J. HUDSON**
**AND TIFFANY A. ROATH, INDIVIDUALLY**

Certified Document Number: 59945464 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 28, 2015

Certified Document Number:        59945464 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



TAB 4



| | | |
|---|---|---|
| BRIDGESTONE LAKES COMMUNITY | § | IN THE DISTRICT COURT |
| IMPROVEMENT ASSOCIAITON, INC. | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| BRIDGESTONE LAKES DEVELOPMENT | § | |
| COMPANY, INC., ET AL | § | 152nd JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above numbered and titled cause came to trial before the Court without a jury on April 9, 2014. All parties and their attorneys were present. After considering the pleadings, prior rulings by the Court, the evidence and the arguments from counsel, the Court makes its findings of fact and conclusions of law as follows:

## FINDINGS OF FACT:

1. On or about September 8, 2011, Bridgestone Lakes Community Improvement Association, Inc. ("BLCIA") filed suit against Bridgestone Lakes Development Company, Inc. ("Developer") and former BLCIA Director/Officer, Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath ("Directors/Officers") for allegedly failing to construct the Bridgestone Lakes Section 1 Detention Pond consistent with plans causing an increase in erosion to pond side slopes.

2. On or about December 22, 2011, Joseph Alan Callier, Callier & Garza, L.L.P. was retained by Developer and Directors/Officers to provide legal representation against allegations contained in the BLCIA suit.

3. Consistent with BLCIA Bylaw Article XI, Section 5-Indemnification, on or about February 6, 2012, former BLCIA Directors/Officers filed a counterclaim for indemnity against BLCIA for fees and expenses incurred by virtue of being made defendants to a suit due to

1

alleged activities as BLCIA Directors/Officers.

4.    On or about December 21, 2012, this Court granted a summary judgment dismissing all BLCIA causes of action against Developer and former BLCIA Directors/Officers.

5.    On or about April 12, 2013, this Court found that former BLCIA Directors/Officers were entitled to be indemnified under BLCIA Bylaw Article XI, Section 5-Indemnification.

6.    On or about July 3, 2013, BLCIA filed a Fourth Amended Petition against Developer and former BLCIA Directors/Officers alleging the similar causes of action described in the suit dismissed on December 21, 2012.

7.    On or about March 7, 2014, this Court granted a Summary Judgment dismissing all BLCIA causes of action against Developer and former BLCIA Directors/Officers in Plainitff's Fourth Amended Petition.

8.    The legal services invoice #42840, dated January 5, 2012, in the total amount of $4,600.00 was for work performed and expenses incurred on behalf of Developer and former BLCIA Directors/Officers; however, since only former BLCIA Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% were incurred on behalf of Directors/Officers.    Therefore, the amount incurred on behalf of Directors/Officers is $3,450.00.

9.    The legal services invoice #42876, dated February 6, 2012 in the total amount of $11,905.44 was for work performed and expenses incurred on behalf of Developer and former BLCIA Directors/Officers; however, since only former BLCIA Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% were incurred on behalf of Directors/Officers.    Therefore, the amount incurred on behalf of Directors/Officers is $8,929.08.

Certified Document Number: 61142952 - Page 2 of 10

2

Certified Document Number: 61142952 - Page 3 of 10

10. The legal services invoice #42911, dated March 5, 2012 in the total amount of $1,536.72 was for work performed and expenses incurred on behalf of Developer and former BLCIA Directors/Officers; however, since only former BLCIA Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $1,152.54.

9. The legal services invoice #42975, dated April 3, 2012, in the total amount of $1,507.00 was for work performed and expenses incurred on behalf of Developer and former Directors/Officers; however, since only former BLCIA Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $1,130.25.

10. The legal services invoice #43009, dated May 3, 2012, in the total amount of $980.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses benefitted Developer and 75% of the fees were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $735.00.

11. The legal services invoice #43067, dated June 4, 2012, in the total amount of $2,420.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees were incurred on behalf of Developer and 75% of the fees were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $1,815.00.

12. The legal services invoice #43098, dated July 3, 2012, in the total amount of $2,120.00

3

was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $1,590.00.

13. The legal services invoice #43134, dated August 3, 2012, in the total amount of $80.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $60.00.

14. The legal services invoice #43171, dated September 4, 2012, in the total amount of $7,260.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $5,445.00.

15. The legal services invoice #43204, dated October 2, 2012, in the total amount of $1,220.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $915.00.

Certified Document Number: 61142952 - Page 4 of 10

4

16. The legal services invoice #43264, dated November 2, 2012, in the total amount of $6,800.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $5,100.00.

16. The legal services invoice #43286, dated December 4, 2012, in the total amount of $720.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $540.00.

17. The legal services invoice #43322, dated January 4, 2013, in the total amount of $9,159.43 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $6,869.57.

18. The legal services invoice #43348, dated February 4, 2013, in the total amount of $5,600.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on

Certified Document Number: 61142952 - Page 5 of 10

behalf of Directors/Officers is $4,200.00.

19.    The legal services invoice #43390, dated March 1, 2013, in the total amount of $2,670.86 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers.    Therefore, the amount incurred on behalf of Directors/Officers is $2,003.15.

20.    The legal services invoice #43412, dated April 1, 2013, in the total amount of $10,208.25 was incurred only on behalf of Directors/Officers.  Therefore, the amount incurred on behalf of Directors/Officers is $10,208.25.

21.    The legal services invoice #43469, dated May 2, 2013, in the total amount of $11,440.00 was incurred only on behalf of Directors/Officers.  Therefore, the amount incurred on behalf of Directors/Officers is $11,440.00.

22.    The legal services invoice #43514, dated June 4, 2013, in the total amount of $1,920.00 was incurred only on behalf of Directors/Officers.  Therefore, the amount incurred on behalf of Directors/Officers is $1,920.00.

23.    The legal services invoice #43535, dated July 1, 2013, in the total amount of $2,380.00 was incurred only on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $2,380.00.

24.    The legal services invoice #43559, dated August 5, 2013, in the total amount of $2,036.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of fees and expenses

Certified Document Number: 61142952 - Page 6 of 10

6

were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $1,527.00.

25. The legal services invoice #43595, dated September 4, 2013, in the total amount of $2,980.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $2,235.00.

26. The legal services invoice #43676, dated December 3, 2013, in the total amount of $2,380.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $1,785.00.

27. The legal services invoice #43709, dated January 1, 2014, in the total amount of $12,206.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $9,154.50.

28. The legal services invoice #43741, dated February 4, 2014, in the total amount of $1,829.00 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then

Certified Document Number: 61142952 - Page 7 of 10

7

25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $1,371.75.

28. The legal services invoice #43768, dated March 4, 2014, in the total amount of $2,695.05 was for work performed and expenses created on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers are entitled to indemnity, then 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $2,021.29.

29. The legal services incurred but not invoiced for the month of March 2014, in the total amount of $6,151.13 was for work performed and expenses incurred on behalf of Developer and former BLCIA Directors/Officers; however, since only Directors/Officers is entitled to indemnity, then up until March 7, 2014, 25% of fees and expenses were incurred on behalf of Developer and 75% of the fees and expenses were incurred on behalf of Directors/Officers. Therefore, the amount incurred on behalf of Directors/Officers is $4,613.35 for the month of March 2014.

30. The legal services incurred but not invoiced for (pretrial preparation of witnesses and presentation of evidence) for trial to the Court totaled 5 hours and then all legal services solely benefit Directors/Officers or $2,000.00.

31. The total fees and expenses that Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath, as contractual indemnitees, incurred for being made Defendants for allegedly being legally responsible for damages to the Detention Pond servicing Bridgestone Lakes Section 1 (along with Developer) for breach of fiduciary duty, failure to act in good faith, fraud,

8

negligence, gross-negligence and willful misconduct while acting as Director/Officer of the Bridgestone Lakes Community Improvement Association, Inc. is $94,590.73.

32.    Should this matter be subject to an appeal, the evidence is that attorney's fees in the amount of $14,000.00 will be incurred for any appeal of this matter to the Court of Appeals; $4,000.00 will be incurred for any petition for review of this matter to the Supreme Court; and $10,000.00 will be incurred for any granted petition for review of this matter to the to the Supreme Court.

## CONCLUSIONS OF LAW:

1.    Bridgestone Lakes Community Improvement Association, Inc. ("BLCIA") Bylaw Article XI, Section 5-Indemnification, states in pertinent part, that "The Association shall indemnify any director, officer or employee of the Association, against expenses actually and necessarily incurred by him and any amount paid in satisfaction of judgments in connection with any action, suit or proceedings, whether civil or criminal in nature, in which he is made a party by reason of being or having been such a director, officer or employee (whether or not a director, officer or employee at the time such costs and expenses are incurred by or imposed upon him) except in relation to matters as to which he shall be judged in such action, suit or proceedings to be liable for gross negligence or willful misconduct in the performance of duty." Since there is a judicial finding (through summary judgment signed December 21, 2012 and March 7, 2014) that neither Robert A. Hudson, Claudia J. Hudson or Tiffany A. Roath were liable for any acts of gross negligence or willful misconduct while performing as Director/Officer of BLCIA, BLCIA is indebted to contractual indemnitees Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath.

2.    Consistent with *Tony Gullo Motors v. Chapa*, 212 S.W. 3d 299 (Tex. 2006), attorney's fees and expenses were segregated between Bridgestone Lakes Development Company, Inc. and

Certified Document Number: 61142952 - Page 9 of 10

contractual indemnitees Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath and Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath are entitled to recover the fees and expenses incurred as a result of Bridgestone Lakes Community Improvement Association, Inc.'s suit against them as former Directors/Officers of the Association. Bridgestone Lakes Community Improvement Association, Inc. is indebted in the sum of $94,590.73 (as contractual indemnitor) to Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath (as defendants/contractual indemnitees) for reasonable and necessary attorney's fees and expenses incurred by them as a result of BLCIA making each a party to this lawsuit based on their activities as BLCIA Directors/Officers.

3.      Should this matter be appealed and Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath are prevailing parties in such appeal, then the indebtedness shall increase as follows: attorney's fees in the amount of $14,000.00 for any appeal of this matter to the Court of Appeals; $4,000.00 for any petition for review of this matter to the to the Supreme Court; and $10,000.00 for any granted petition for review of this matter to the to the Supreme Court.

SIGNED June 10, 2014.

JUDGE PRESIDING

Certified Document Number: 61142952 - Page 10 of 10



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   April 28, 2015

Certified Document Number:        61142952 Total Pages:  10

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



**TAB 5**

CAUSE NO. 2011-53723

| | | |
|---|---|---|
| BRIDGESTONE LAKES COMMUNITY IMPROVEMENT ASSOCIATION, INC. | § § § | IN THE DISTRICT COURT |
| v. | § § | HARRIS COUNTY, TEXAS |
| BRIDGESTONE LAKES DEVELOPMENT COMPANY, INC., ET AL | § § § | 152nd JUDICIAL DISTRICT |

**FILED**
Chris Daniel
District Clerk

**JUN 30 2014**

Time:_____

Harris County, Texas

By_____
Deputy

<u>JUDGMENT</u>

On April 9, 2014, the above matter was called to trial and the parties appeared in person and with their Attorneys of Record, Plaintiff/Counter-Defendant Bridgestone Lakes Community Improvement Association, Inc., through Attorney of Record, M. Susan Rice, and Defendants/Counter-Plaintiffs Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath, through Attorney of Record, Joseph Alan Callier, both announced ready for trial, a jury was waived and the Court, sitting as trier of fact, heard evidence.

At the conclusion of the evidence, the Court concluded that Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath, consistent with a contractual indemnity provision contained within Bylaws of Bridgestone Lakes Community Improvement Association, Inc., Article XI–Section 5, were entitled to receive a judgment against Bridgestone Lakes Community Improvement Association, Inc. for reasonable and necessary attorney's fees and expenses incurred by each by being made a Defendant by Bridgestone Lakes Community Improvement Association, Inc. to this lawsuit based on their activities as Bridgestone Lakes Community Improvement Association, Inc. Directors/Officers. It is therefore

**ORDERED** that Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath receive $ 94,990.73 from Bridgestone Lakes Community Improvement Association, Inc. It is

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Certified Document Number: 61390024 - Page 1 of 2

further <ins>IN WHICH SAID PARTIES ARE PREVAILING PARTIES</ins>

**ORDERED** that Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath may receive **$14,000** from Bridgestone Lakes Community Improvement Association, Inc. for any appeal of this matter to the Court of Appeals; **$4,000** for any petition for review of this matter to the Supreme Court; and **$10,000** should the petition be granted. It is finally

**ORDERED** that taxable court costs are charged against Bridgestone Lakes Community Improvement Association, Inc. and all writs and processes for the enforcement and collection of this Judgment and the costs of Court, will issue as necessary. All other relief not expressly granted herein is DENIED.

**SIGNED** on this _____ day of ____**JUN 2 7 2014**____, 2014.

_____
JUDGE PRESIDING

Certified Document Number: 61390024 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   April 28, 2015

Certified Document Number:        61390024 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**TAB 6**

P-2

MODIX

## CAUSE NO. 2011-53723

| | | |
|---|---|---|
| BRIDGESTONE LAKES COMMUNITY IMPROVEMENT ASSOCIATION, INC. | § § § | IN THE DISTRICT COURT |
| v. | § § | HARRIS COUNTY, TEXAS |
| BRIDGESTONE LAKES DEVELOPMENT COMPANY, INC., ET AL | § § § | 152nd JUDICIAL DISTRICT |

## MODIFIED FINAL JUDGMENT

On April 9, 2014, the above matter was called to trial and the parties appeared in person and with their Attorneys of Record, Plaintiff/Counter-Defendant Bridgestone Lakes Community Improvement Association, Inc., through Attorney of Record, M. Susan Rice, and Defendants/Counter-Plaintiffs Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath, through Attorney of Record, Joseph Alan Callier, both announced ready for trial, a jury was waived and the Court, sitting as trier of fact, heard evidence.

At the conclusion of the evidence, the Court concluded that Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath, consistent with a contractual indemnity provision contained within Bylaws of Bridgestone Lakes Community Improvement Association, Inc., Article XI–Section 5, were entitled to receive a judgment against Bridgestone Lakes Community Improvement Association, Inc. for reasonable and necessary attorney's fees and expenses incurred by each by being made a Defendant by Bridgestone Lakes Community Improvement Association, Inc. to this lawsuit based on their activities as Bridgestone Lakes Community Improvement Association, Inc. Directors/Officers. It is therefore

**ORDERED** that Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath receive $94,990.73 from Bridgestone Lakes Community Improvement Association, Inc., which shall

Certified Document Number: 61672276 - Page 1 of 2

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

accrue post-judgment interest at 5% compounded annually until satisfied.  It is further

**ORDERED** that Robert A. Hudson, Claudia J. Hudson and Tiffany A. Roath, if prevailing parties, shall receive **$14,000** from Bridgestone Lakes Community Improvement Association, Inc. for any appeal of this matter to the Court of Appeals, **$4,000** for any petition for review of this matter to the Supreme Court; and **$10,000** should the petition be granted. It is finally *in which said parties are prevailing parties*

**ORDERED** that taxable court costs are charged against Bridgestone Lakes Community Improvement Association, Inc. and all writs and processes for the enforcement and collection of this Judgment and the costs of Court, will issue as necessary. All other relief not expressly granted herein is DENIED.

**SIGNED** on this _____ day of ___JUL 2 1 2014___ _____, 2014.

_____
JUDGE PRESIDING

Certified Document Number: 61672276 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   April 28, 2015

Certified Document Number:        61672276 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**TAB 7**



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 28, 2015

Certified Document Number:        51588158 Total Pages:  15

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**